395 So.2d 525 (1981)
Henry Lee CLARK, Appellant,
v.
STATE of Florida, Appellee.
No. 57125.
Supreme Court of Florida.
March 5, 1981.
*527 Jack O. Johnson, Public Defender, and Thomas J. Sherwood, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
ADKINS, Justice.
On February 20, 1979, appellant entered a plea of nolo contendere to charges of introducing contraband into a correctional or penal institution in violation of section 944.47, Florida Statutes (Supp. 1978), and possession of marijuana in violation of section 893.13(1)(e), Florida Statutes (1977). On April 19, 1979, appellant was sentenced to six months in the county jail for introducing contraband into a prison, but the trial court considered the act as a single transaction so did not impose a sentence on the possession charge. Appellant reserved the right to appeal denial of the motion to dismiss, attacking the constitutionality of section 944.47, and the motion to suppress evidence of illegally-seized contraband.
Appellant was a correctional officer at Polk Correctional Institution for approximately six months. On the morning of November 6, 1979, the chief security officer, Major Dobson, authorized a "shakedown" search of all employees coming on duty for the second shift. The Department of Corrections Administrative Rules and Regulations, chapter 33-4.02(8), warns that a prison employee shall not refuse to submit to a search which may be conducted when he is entering, departing, or otherwise upon the premises of the institution. Major Dobson testified that the shakedown searches are ordered at random intervals to keep employees from bringing contraband into the facility. The search consists of a pat-down of the outer body after employees remove shoes and jackets.
As the correctional officers came on duty, they were searched in a private office, where they then searched other arriving employees. Sergeant Crews searched the appellant and discovered two marijuana cigarettes rolled up in one sock. Appellant said they were for his own use, removed the sock, and handed the sock and cigarettes to Sergeant Crews. Major Dobson was notified, and he fired the appellant. Two days later the appellant was arrested.
Appellant argues that the trial court should have dismissed this case because section 944.47 is unconstitutionally vague and overbroad, and that it unlawfully delegates authority to the prison administration. Appellant also maintains that it was error to deny the motion to suppress when appellee had not presented testimony to establish the reasonableness of the warrantless search.
Section 944.47, Florida Statutes, is not overbroad as applied to appellant, so he cannot challenge it on those grounds. Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881 (Fla. 1972); Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979). Appellant's conduct was not wholly innocent so he could only assert that overbreadth had a chilling effect on his First Amendment freedoms; however, he does not make that assertion. Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). When appellant brought marijuana into the prison, his conduct was clearly illegal and proscribed in understandable terms. Therefore, he cannot challenge the statute as overbroad because it criminalizes legal as well as illegal activity. State v. Ashcraft, 378 So.2d 284 (Fla. 1979). Appellant has not presented an example of selective enforcement which he claims results from overbreadth. He does not show that he alone was arrested while other people who brought marijuana into the prison were not arrested. For these reasons, appellant does not have standing to challenge section 944.47 as overbroad.
Section 944.47 is not an unreasonable or unlawful delegation of legislative power to the executive branch. The "reasonableness" of delegation must be determined within the practical context of the *528 problem. State v. Griffin, 239 So.2d 577 (Fla. 1970). In Griffin this Court recognized that where direct legislative supervision is impractical, detailed legislation may also be impractical. A prison, unlike most regulated agencies and departments, cannot be run by procedures carefully detailed by "outsiders."
The realities of running a penal institution are complex and difficult, so wideranging deference is to be accorded the decisions of prison administrators. Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Prison officials in Jones considered the concept of a prisoners' labor union fraught with potential dangers, and refused to allow recruitment within the North Carolina prison. The United States Supreme Court found that the administrators could lawfully prohibit labor union solicitation because the restriction was consistent with the legitimate operational considerations of the prison, and did not violate the prisoners' First or Fourteenth Amendment rights.
Of course, the legislature must establish guidelines to prevent abuse of administrative power. State v. Cumming, 365 So.2d 153 (Fla. 1978); Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1965); State ex rel. Davis v. Fowler, 94 Fla. 752, 114 So. 435 (1927). The legislature mandated that the "officer in charge of such institution" is the person qualified to designate the "regular channels" of entry to the prison. The prison administrator can allow many things to pass in through those channels. However, items of contraband were outlined by the legislature. The prison administrator must keep out items within that outline which, based on his experience in the prison system, are potentially harmful. The prison administration acted clearly within the legislative guidelines when it kept marijuana from being introduced freely into the prison.
Appellant asserts that the trial court erred in denying its motion to suppress without hearing testimony from the state. The marijuana was discovered in a warrantless search, and since the state did not proffer any exception to the warrant requirement, the search allegedly violated appellant's Fourth Amendment rights. The trial court said that appellant's "special classification" as a prison guard made the search reasonable, and he heard no testimony from the state before denying appellant's motion to suppress evidence.
A prison entrance is the functional equivalent of a border because it is an official boundary where traffic may conveniently be stopped and inspected. An inspection may reveal contraband, enabling officials to stop contraband at the border instead of having to detect illegal goods once dispersed inside the border. The inspection, however, must be reasonable and must not violate Fourth Amendment rights of the individual who crosses the boundary.
A balancing test is used to determine reasonableness of border searches. In United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the degree of intrusion into individual freedom was weighed against the public interest protected by the search. A border search of an automobile in that case involved only minimal intrusion: a stop, brief visual inspection, and a few questions. The reasonableness of a border search in United States v. Himmelwright, 551 F.2d 991 (5th Cir.1977), cert. denied, 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977), depended upon the balance struck between the level of official intrusion and the public interest to be served by such an intrusion. There the Court found that a strip search at an airport was reasonable in light of the public interest in stemming drug traffic into the United States.
The shakedown search of appellant involved only minimal intrusion compared with the state's interest in keeping contraband out of the prison. As guards came to work, they were asked to remove from their pockets any articles which they wished to claim, and to take off jackets and shoes. A pat-down ensued, and only occasionally was any other item of clothing removed. The chief security officer at the Polk Correctional *529 Institution testified that similar shakedowns occur at other Florida prisons where he has worked.
The balancing test is appropriate in appellant's case, and we find that a prison guard's right to be free from random shakedown searches does not outweigh the state's interest in preventing the flow of contraband into prisons. A prison guard's expectation of privacy is extremely limited by the environment that he or she chooses to work in. One can only expect to be free from intrusion where there is a reasonable expectation of privacy. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1976). The United States Supreme Court noted in Lanza v. New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962), that a prison shares none of the privacy of a home, an office, or an automobile. "In prison, official surveillance has traditionally been the order of the day." 370 U.S. at 143, 82 S.Ct. at 1220. Lanza dealt with electronically intercepted and recorded conversations between a prisoner and his brother.
Lanza has been applied to a reformatory guard who attempted to smuggle marijuana into an Oklahoma reformatory. United States v. Kelley, 393 F. Supp. 755 (W.D.Okl. 1975). In Kelley the Court correctly emphasized that the guard could not expect to be free from searches when he had worked in the reformatory for years, and each day he had passed two signs warning that all persons and packages were subject to search.
In United States v. Sihler, 562 F.2d 349 (5th Cir.1977), a sign on the main prison entrance warned of prosecution for bringing in contraband. Marijuana was found when a prison guard was searched, and the search was held valid because the guard passed the sign every day. Further, when the guard was hired he was advised not to bring contraband into the prison, and he had heard of instances where persons entering the prison were routinely searched. Under those circumstances, the Court held that the guard consented to search as a condition of employment and access to the prison, and that it was a reasonable security measure to require such consent. See, e.g., Shaw v. Hutto, 22 Cr.L. 2021 (E.D.Va. 1971).
While it is uncertain whether the appellant signed a consent form, his consent to search may be implied from his reporting to work at the prison when he knew the search procedures used. All new employees at Polk Correctional Institution routinely receive a booklet from the Department of Offender Rehabilitation containing personnel rules and regulations. The booklet describes the prison security measures and gives rules for security checks of the guards. In addition, the chief security officer stated that he briefed the appellant on shakedown searches when the appellant first came to work at the prison. In his year of employment at the Polk Institution, the chief security officer had conducted three or four shakedowns at random intervals. Since the appellant had been employed for approximately six months, it is probable that he had seen or even participated in a prior shakedown. The chief security officer could not recall specifically whether the appellant had been shaken down before.
Appellant argues that a prison guard's Fourth Amendment rights should not be equated with those of a prisoner simply because the guard works in a prison. The mere pat-down search of the appellant did not approach the allowable degree of intrusion into a prisoner's rights. United States v. Lilly, 576 F.2d 1240 (5th Cir.1978) (Prisoner may be subjected to a body cavity search without probable cause). However, stringent control of contraband is crucial for the safety of guards as well as prisoners. Strict methods to effect this control must apply, in some degree, to all who enter a prison.
Appellant suggests that less intrusive means of control should be used: electronic surveillance or increased use of investigatory personnel to watch prison employees. These methods would cost more money and require more personnel, compounding two of the prison system's greatest problems. *530 A shakedown search is quick, effective, and inexpensive. It is less intrusive than constant surveillance.
The warrantless shakedown search of appellant did not violate his Fourth Amendment rights. The trial court did not err in denying the motion to suppress evidence recovered during the shakedown. We affirm.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.