570 So.2d 346 (1990)
Anthony James LEWIS, Appellant,
v.
STATE of Florida, Appellee.
Yolanda JONES, James Jones, and Johnny Roy Wells, Appellants,
v.
STATE of Florida, Appellee.
Nos. 89-00104, 89-00258.
District Court of Appeal of Florida, Second District.
October 12, 1990.
Rehearing Denied November 27, 1990.
*347 Jack T. Edmund, Fort Meade, for appellants Anthony James Lewis, Yolanda Jones, and James Jones.
Christopher A. Grillo of Christopher A. Grillo, P.A., Fort Lauderdale, for appellant Johnny Roy Wells.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Dell H. Edwards, Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Anthony Lewis, Yolanda Jones, James Jones, and Johnny Wells appeal their convictions for trafficking in cocaine. We affirm the convictions of Mr. Lewis, Mr. Jones, and Mrs. Jones. We reverse the conviction of Mr. Wells because the state's circumstantial evidence did not provide substantial, competent evidence inconsistent with Mr. Wells' reasonable hypothesis of innocence. State v. Law, 559 So.2d 187 (Fla. 1989).
At approximately 7 p.m., on May 25, 1988, a highway patrol trooper observed a Ford Bronco, which was going west on State Road 60 in Polk County, Florida. The vehicle was traveling well below the posted speed limit and was weaving. The trooper followed the Bronco in his patrol car. Suddenly, the Bronco's driver braked and pulled over onto the shoulder of the road. The trooper pulled in behind the Bronco. He saw four people inside the vehicle. Ultimately, it was established that Mr. and Mrs. Jones were in the back seat; Mr. Lewis was in the front passenger seat; and Mr. Wells was the driver. As the trooper approached the vehicle, he saw Mrs. Jones reach down and move a nylon bag from the floor of the back seat to a compartment behind the back seat.
Mr. Wells exited the vehicle and quickly walked back to talk to the trooper. He explained that they were changing drivers. There was a slight odor of alcohol on Mr. Wells' person, but the trooper did not believe that he was legally intoxicated. As the trooper was writing a warning for failure to remain within a single lane, a second trooper arrived with a dog. The dog was trained to locate cocaine. It "alerted" at the tailgate section of the Bronco, near the compartment containing the nylon bag.
As a result of the dog's actions, the troopers asked Mr. Wells for permission to search the vehicle. Mr. Wells gave permission, but indicated that the Bronco belonged to Mrs. Jones. She in turn gave permission to search the vehicle. The search revealed two wrapped bricks of cocaine inside the bag. The bricks weighed approximately two kilograms. Thereafter, the troopers searched the occupants. They found a tin foil package on Mr. Jones, which he admitted contained cocaine. They located a beeper on Mr. Lewis, and a second beeper which belonged to Mr. Jones. No cocaine or other items were located on Mr. Wells.
While the troopers were conducting a more complete search of the Bronco, they placed the four defendants inside the patrol car. Unbeknownst to the defendants, two tape recorders were recording their conversations inside the car. Although those recordings are not totally audible, they do contain statements by Mr. and Mrs. Jones and by Mr. Lewis which suggest that they knew cocaine was in the vehicle at the time it was stopped.[1] Mr. Wells actively participated *348 in these conversations, but never stated that he was aware of the cocaine prior to the stop. The state observes that Mr. Wells' statements on the tape recording do not contain the protests which the state believes an innocent person would normally make.
In statements which were voluntarily obtained from the four defendants following their arrests, Mr. Wells explained that he was married to Mr. Jones' sister. The four people lived in Hollywood, Florida. He maintained that the Joneses had told him that they were going to Tampa to spend the night with Mrs. Jones' parents and to visit Busch Gardens. Mr. and Mrs. Jones supported his claims. Mr. Lewis worked for Mrs. Jones in a record shop. He also maintained that the group was traveling to Tampa to visit Busch Gardens.
We first examine the case against Mr. Wells. He was not in actual possession of the cocaine, and the cocaine was not in plain view. In order to establish constructive possession of the cocaine, it was incumbent upon the state to prove that Mr. Wells knew of its presence, knew of its illicit nature, and had dominion and control over the contraband. Brown v. State, 428 So.2d 250 (Fla.), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983); Agee v. State, 522 So.2d 1044 (Fla. 2d DCA 1988); Pena v. State, 465 So.2d 1386 (Fla. 2d DCA 1985). Although these elements may be established by circumstantial evidence, this was not accomplished in this case. Other than Mr. Wells' mere presence in the vehicle, there is no evidence that he knew the cocaine was in the Bronco. Mere proximity to contraband is not sufficient to establish constructive possession. Johnson v. State, 456 So.2d 923 (Fla. 3d DCA 1984). Mr. Wells presented a reasonable hypothesis that he was deceived by the others and simply believed he was going to Tampa to visit relatives and to see Busch Gardens. The state failed to present evidence which was inconsistent with his hypothesis and, accordingly, its evidence was insufficient to warrant Mr. Wells' conviction. State v. Law, 559 So.2d 187 (Fla. 1989).
The state argues that Mr. Wells' failure to protest his innocence during the recorded conversations in the police car after he had been arrested is sufficient circumstantial evidence to warrant the submission of his case to the jury. We disagree. The state's argument is uncomfortably similar to a suggestion that guilt can be inferred from a defendant's refusal to talk to the police or to testify following his arrest. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); Wythers v. State, 348 So.2d 390 (Fla. 3d DCA 1977). The right against self-incrimination may not be directly implicated by testimony or argument concerning the refusal of detained persons to protest their innocence inside a police car. See generally Jackson v. State, 522 So.2d 802 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988) (statement that defendant appeared calm during arrest and booking was not an impermissible comment on the defendant's exercise of the right against self-incrimination). Without resolving that difficult issue, we are still unprepared to permit such questionable evidence to become the crux of the state's case.
The state's case against Mr. and Mrs. Jones, however, is convincing. There is a bag containing a large quantity of cocaine hidden within their vehicle. The cocaine is also located within Mr. and Mrs. Jones' immediate physical presence. Mrs. Jones moved the bag from their vicinity to a rear compartment as the police arrived. Both of them made statements in the police car which can be reasonably interpreted as incriminating. Mr. Jones had additional cocaine on his person. Thus, Mr. and Mrs. Jones' guilt was properly a matter for jury resolution.
The Joneses argue that their tape recorded statements should not have been admitted because they had a reasonable *349 expectation that their oral communications would not be subject to interception under section 934.02(2), Florida Statutes (1987), and because the surreptitious recording of their post-arrest statements violated their fourth and fifth amendment rights. These arguments have already been rejected in earlier precedent. Moreland v. State, 552 So.2d 937 (Fla. 2d DCA 1989), review denied, 562 So.2d 346 (Fla. 1990); DiGuilio v. State, 451 So.2d 487 (Fla. 5th DCA 1984), approved on other grounds, 491 So.2d 1129 (Fla. 1986); Brown v. State, 349 So.2d 1196 (Fla. 4th DCA 1977), cert. denied, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978).
The state's case against Mr. Lewis is also sufficiently distinguishable from its case against Mr. Wells to warrant jury resolution. In addition to his presence in the Bronco, Mr. Lewis made statements in the police car which indicate that he anticipated that the trained dog would probably find cocaine. Although there are many innocent reasons which would explain his possession of a beeper, his own explanation  that he had it so his girlfriends could call him  was an explanation that the jury could reject. In light of the common usage of beepers to facilitate drug transactions, we find this circumstantial evidence, coupled with Mr. Lewis' statements, was sufficient to create a jury question.
Finally, the defendants contend that they received ineffective assistance of trial counsel because they were represented by one attorney during their joint trial. We decline to consider this issue on direct appeal. Kelley v. State, 486 So.2d 578 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); Cumper v. State, 506 So.2d 89 (Fla. 2d DCA 1987).
Affirmed in part, reversed in part, and remanded.
DANAHY, A.C.J., and PATTERSON, J., concur.
NOTES
[1] During the taped conversation, Mr. Jones expressed concern that his fingerprints were on the bag that contained the cocaine. Mr. Lewis suggested that he knew they had problems when the dog was brought to the scene of the stop. Mrs. Jones expressed concern that the search would locate other items in the Bronco which would incriminate her and that she would lose her Bronco.