FARMER, Judge.
Mitchell (Complainant), an employee of the Department of Corrections (DOC), timely appeals a final order of the Public Employees Relations Commission (PERC) affirming his discharge from employment. We affirm.
Complainant resided in the Bachelor’s Officer Quarters (BOQ) on prison property. One day, officers were searching prisoners and employees for contraband at the entrance to the facility, using an Ionsean test, a variation of mass spectrometry. The procedure involves obtaining a sample by vacuuming the subject’s shoulder area down to the palm of the hand, both front and back. Dust particles are trapped in a filter, which is then placed into the Ionsean machine. After analyzing the sample, the machine fights either green or red and displays a computerized image of the analysis. If narcotics or explosives residue is found, the fight is red, a beeping alarm sounds, and the computer analysis is saved.
Complainant tested positive for the presence of cocaine particles, and was therefore required to submit to a strip and body cavity search. No drugs were found, and complainant asked to be excused from work. Shortly after he arrived at the BOQ, DOC employees and a certified narcotics search dog inspected his apartment. The dog alerted to a portion of a refrigerator. No drugs were found in the apartment. That afternoon, complainant was requested to submit to a urine test, and tested positive for cocaine. He was discharged from employment on that basis, which decision he has now appealed.
Complainant contends that the Ionsean test performed by the DOC was a drug test within the meaning of section 112.0455(5)(b), Florida Statutes (1993), which defines “drug test” to mean:
“any chemical, biological, or physical instrumental analysis administered for the purpose of determining the presence or absence of a drug or its metabolites.”
Although this definition appears broadly phrased, in the context of the overall statutory framework it is further limited by other definitional provisions. Section 112.0455(5)(c) defines “initial drug test” to mean:
“a sensitive, rapid, and reliable procedure to identify negative and presumptive positive specimens. All initial tests shall use an immunoassay procedure or an equivalent, or shall use a more accurate scientifically accepted method approved by the Agency for Health Care Administration as such more accurate technology becomes available in a cost-effective form.”
Section 112.0455(5)(d) adds:
“ ‘Confirmation test,’ ‘confirmed test,’ or ‘confirmed drug test’ means a second analytical procedure used to identify the presence of a specific drug or metabolite in a specimen. The confirmation test must be-different in scientific principle form that of the initial test procedure. This confirmation method must be capable of providing requisite specificity, sensitivity, and quantitative accuracy.”
Finally, section 112.0455(5)(k) defines “specimen” as:
“a tissue or product of the human body capable of revealing the presence of drugs or their metabolites.”
Complainant argues that, because the Ion-scan test is a “drug test” within the meaning of the statute, reasonable suspicion to con *164 duct that test should have been required.[1] As no reasonable suspicion existed in the first instance, he argues, the ensuing searches and urine test were improper.
We do not believe that the Ionscan test constitutes a drug test within the meaning of the statute. Courts are required to give full effect to all statutory provisions and construe related statutes in harmony with one another. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452 (Fla.1992). It is basic to statutory construction that the words chosen by the legislature must be given their plain and ordinary meaning. Tatzel v. State, 356 So.2d 787 (Fla. 1978).
Although literally the Ionscan test may seem to fit within the broad meaning of the term “drug test,” we deduce from the whole statutory scheme and text a purpose to protect state employees from unwarranted intrusive drug testing, requiring samples of bodily fluids and tissues. Even though the Ionscan test is a fine technical line between the concept of a “search” and that of a “test,” it plainly constitutes a less intrusive means of searching prison employees for contraband than the “shakedown” method upheld in Clark v. State, 395 So.2d 525 (Fla.1981).
Complainant next argues that the results of the Ionscan test were improperly admitted because the DOC did not adequately establish its scientific accuracy under the admissibility standards of Frye v. United States, 293 F. 1013 (D.C.Cir.1923). Complainant bases this argument on the interest of the DOC’s expert in promoting the Ionscan testing device.
It should be noted that the Ionscan test result was not admitted as substantive evidence of complainant’s use of drugs; nor was it admitted in a criminal context. Rather, it was admitted for the purpose of establishing reasonable suspicion to conduct later searches and testing. No Florida court has decided whether the Frye test applies in the administrative context, or whether such a stringent test is needed when the evidence is not being adduced to prove guilt or innocence.
Although the hearing ■ officer entertained complainant’s Frye test objection and allowed expert testimony regarding the test results, complainant’s argument actually appears to contend that the novelty of the Ionscan test prohibits its use as a search method under any circumstances. In Clark, the court noted that:
“A prison entrance is the functional equivalent of a border because it is an official boundary where traffic may conveniently be stopped and inspected. An inspection may reveal contraband, enabling officials to stop contraband at the border instead of having to detect illegal goods once dispersed inside the border. The inspection, however, must be reasonable and must not violate Fourth Amendment rights of the individual who crosses the boundary.”
395 So.2d at 528. The court upheld a “shakedown” search as reasonable because of this circumstance.
DOC Rule 33-4.002[2] provides as follows:
“(8)(a) No employee shall refuse to submit to a search or inspection by an authorized employee, of his person, personal property or vehicle while entering, departing or otherwise on the premises of an institution. Refusal of an employee to submit to such search or inspection is considered as a serious form of insubordination * * *.
(b)l. When the officer in charge has good reason to believe an employee is involved in the unauthorized or unlawful possession or movement of anything into or out of an institution or facility of the Department, he may authorize a more intensive search than is normally required. Such an intensive search may include the employee’s person, vehicle, and any locker, desk or storage space assigned to or used by the employee.”
*165 Certainly, if all persons entering the jail tested positive for cocaine and were thereby subjected to the kind of intrusive testing and search that the statute was designed to control, there would be a basis to conclude that the Ionscan test was an unreasonable search. While the Ionscan test screens merely for a residue found in some circumstances but not in others, we do not believe that this kind of search is unreasonable. Because it cannot be said that the Ionscan test is unreasonable, we conclude that a positive test result is “good reason” to conduct further reasonable search procedures of the kind employed here and therefore may constitute a reasonable suspicion.
Complainant’s final argument is that the alert of the drug detection dog in his apartment did not create a reasonable suspicion that he was using drugs. His argument is based upon the drug detection dog’s behavior alone, and is founded on an assumption that the Ionscan test results may not constitute a basis for reasonable suspicion. Reasonable suspicion for purposes of drug testing is defined as:
“[A] belief that an employee is using or has used drugs in violation of the employer’s policy drawn from specific objective and articulable facts and reasonable inferences drawn from those facts in light of experience. * * * Among other things, such facts and inferences may be based upon:
* * * * * ⅜
6. Evidence that an employee has used, possessed, sold, solicited, or transferred drugs while working or while on the employer’s premises ...”
§ 112.0455(5)(j), Fla.Stat. (1993).
Complainant argues that the dog’s alert to a part of a refrigerator in a shared apartment does not lead to a reasonable suspicion that any particular one of multiple occupants has used drugs. The question comes down to whether the combination of the Ionscan results and the dog’s alert in the apartment supplied reasonable cause to conduct the search.
It should be noted that PERC’s finding that both residents jointly consented to the search has not been raised as an issue on appeal. When contraband is not found on the person, the searching authority must prove constructive possession, and that the defendant: 1) knew of its presence, 2) knew of its illicit nature, and 3) had dominion and control over the narcotics. Lewis v. State, 570 So.2d 346, 348 (Fla. 2d DCA 1990). One significant factor in establishing these elements is the defendant’s ownership of the vehicle or premises in which the narcotics were found. Id. Obviously, this level of proof exceeds the required showing for reasonable suspicion, which is “something less than probable cause, but more than an inchoate and unparticularized suspicion or hunch.” See Rouse v. State, 643 So.2d 696, 697 (Fla. 1st DCA 1994). The dog’s alert in this case provides a factual basis for a reasonable suspicion to test both residents of that apartment. The fact that only one resident was required to submit to such testing does not, we think, defeat the propriety of the testing.
AFFIRMED.
WARNER and STEVENSON, JJ., concur.

. Section 112.0455(7) states that employers are authorized — but not required — to conduct four types of drug tests: (a) job applicant testing, (b) reasonable suspicion drug testing, (c) routine fitness for duty drug testing during a regular medical examination, and (d) followup testing when an employee has been treated for drug related problems.

. Fla.AdTnin.Code R. 33-4.002.