991 F.2d 640
 John CALANDRO, III, David W. Bullock, J. Richard Arellano,
and Bak 401(K) Profit Sharing Plan (by and through
its trustee, Stevan S. Allen),
Plaintiffs-Appellants,
v.
FIRST COMMUNITY BANK AND TRUST COMPANY OF LONE GROVE,
OKLAHOMA, an Oklahoma Banking Association, James E. Patton,
Robert D. Bell, James H. Yell, John S. Bogle, Donald B.
Howard, Creede Speake, Jr., Jerry Shelton and Jerry Sutton,
Defendants-Appellees.
 No. 92-7008.
 United States Court of Appeals,
Tenth Circuit.
 April 15, 1993.
 
 Francis B. Majorie of Majorie and Vinson, Dallas, TX, for plaintiffs-appellants.
 Carl D. Hall, Jr. (and S.M. Fallis, Jr. of Nichols, Wolfe, Stamper, Nally & Fallis, Inc., Tulsa, OK, for First Community Bank and Trust Co. of Lone Grove, OK, Joseph R. Farris, Jacqueline O'Neil Haglund, and Jody R. Nathan of Feldman, Hall, Franden, Woodard & Farris, Tulsa, OK, for Directors, with him on the brief), for defendants-appellees.
 Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and OWEN, Senior District Judge.*
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 By amended complaint, John Calandro, III and others brought the present action in the United States District Court for the Eastern District of Oklahoma against the First Community Bank and Trust Co. of Lone Grove, Oklahoma (the Bank) and eight members of the Bank's Board of Directors Jurisdiction was based on 28 U.S.C. §§ 1331 and 1332.[1]
 
 
 2
 From the complaint we learn that Ward S. Merrick III founded and controlled Merrico Resources, Inc. (hereinafter referred to as "Merrico") and its affiliate Merrico Investments Corporation, and that from 1983 to 1989 Merrico sponsored a series of oil and gas income programs known as "Merrico Oil and Gas Income Funds" (the 1988 and 1989 funds, the funds here involved, hereinafter referred to as the "Funds"). It is further alleged in the amended complaint that between July, 1988 and April, 1989, the plaintiffs invested some $67,000 in the Funds.[2]
 
 
 3
 From the complaint we also learn that in furtherance of its sales program, Merrico advised all would-be investors that "prior to the formation of [a] Fund subscriptions [would] be held in a federally-insured interest bearing escrow account at the First Community Bank and Trust Company in Lone Grove, Oklahoma" and that "in no event shall escrow be broken prior to a Fund's formation." The escrow agreements signed by Merrico and the Bank were attached to the amended complaint, and the pertinent provisions thereof are attached to this opinion.
 
 
 4
 It is further alleged in the amended complaint that in violation of the escrow agreement, the Bank disbursed plaintiffs' money to Merrico before any of the limited partnerships were formed. The money was supposed to be disbursed to Merrico, as general partner of the limited partnerships for the Funds. From the complaint, we also learn that Merrico thereafter misused the monies given it by the Bank to the end that plaintiffs not only lost the expected income from their investment, but also lost their investment.[3] Further background will be developed, infra.
 
 
 5
 After discovery, the plaintiffs moved for partial summary judgment, and the Bank and the named Directors also filed motions for summary judgment. The district court did not rule on plaintiffs' motion, but granted the defendants' motions and dismissed plaintiffs' action as to all defendants.
 
 
 6
 In granting the defendants' motions for summary judgment, the district court assumed, for the purpose of its ruling, that the Bank had indeed disbursed plaintiffs' monies in violation of the escrow agreement, a fact which the district court stated the Bank and its Directors "conceded" for the purpose of their motions for summary judgment.[4] The sole basis for the district court's grant of summary judgment for all defendants was that any damages sustained by the plaintiffs were caused by Merrico's misconduct and the fact that the Bank disbursed monies in violation of the escrow agreement was not the proximate cause of any damages sustained by the plaintiffs. The district court specifically found that "the intervening factor of Merrico Resources' handling and management of the released funds constitutes a supervening cause which breaks the causal nexus between the conduct or omissions on the part of FCB [the Bank] and the Directors and plaintiffs' losses." Plaintiffs appeal the dismissal of their action on summary judgment.
 
 
 7
 An appellate court reviews a district court's decision on a motion for summary judgment de novo, viewing the record in the light most favorable to the non-movant. Deepwater Investments, Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). To oppose a motion for summary judgment, however, the non-movant must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If a genuine issue exists such that a jury could return a verdict for the non-movant, summary judgment is not appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2510-12, 91 L.Ed.2d 202 (1986).
 
 
 8
 In granting the defendants' motion for summary judgment, the district court relied, inter alia, on Henry v. Merck and Co., Inc., 877 F.2d 1489 (10th Cir.1989). In that case, Ms. Jones, an employee of a chemical company, stole sulfuric acid from a storage area maintained by the company. After leaving her employer's premises, Ms. Jones sought out Gwendolyn Henry and, after a brief verbal altercation, threw the acid in Mrs. Henry's face, causing her severe and permanent injuries. Mrs. Henry and her husband then brought an action based on strict liability and negligence against the chemical company for their respective injuries. The district court granted summary judgment in favor of the defendant company on the strict liability claim, but allowed the negligence claim to go to the jury. The jury returned a verdict in favor of the plaintiffs and awarded Mrs. Henry $450,000 in damages and awarded Mr. Henry $35,000. The defendant company appealed the judgments entered.
 
 
 9
 On appeal, we reversed, holding that the district court erred in not granting the defendant's motion for a directed verdict on the negligence claim. In thus holding, we held: (1) that the defendant company owed no duty to the Henrys to store the acid in such a way as to ensure that it could not be stolen by an employee, id. at 1494; and (2) that the acts of the employee in stealing the acid and using it to injure Mrs. Henry constituted a "supervening cause" of Mrs. Henry's injuries and that the manner in which the acid had been stored by the chemical company was only a "condition" to the injury, rather than the proximate cause thereof, id. at 1496.
 
 
 10
 We recognized in Henry that generally "the question of proximate cause is one of fact for the jury." Id. at 1495 (citing Bannister v. Town of Noble, Okla., 812 F.2d 1265, 1267 (10th Cir.1987)) (citing Thompson v. Presbyterian Hosp., Inc., 652 P.2d 260, 263 (Okla.1982)). We nonetheless held that the question of proximate cause becomes a question of law if there is no evidence from which the jury could find proximate cause. Henry, 877 F.2d at 1495 (citing Bannister, 812 F.2d at 1267) (citing Smith v. Davis, 430 P.2d 799, 800 (Okla.1967)). In holding that the manner in which the defendant stored the acid was, as a matter of law, not the proximate cause of Mrs. Henry's injuries, we stated that under Oklahoma law for an intervening cause to become a supervening cause of an injury it must meet all three parts of the following test: It must be (1) independent of the original act; (2) adequate by itself to bring about the injury; and (3) "one whose occurrence was not reasonably foreseeable." (Henry, 877 F.2d at 1495 (citing Strong v. Allen, 768 P.2d 369, 371 (Okla.1989) (quoting Thompson, 652 P.2d at 264)); Minor v. Zidell Trust, 618 P.2d 392, 394 (Okla.1980)).
 
 
 11
 In granting the defendants' motions for summary judgment in the instant case, the district court held that the fact that the defendants disbursed the escrow funds in violation of the escrow agreement was not the proximate cause of plaintiffs' injury and that Merrico's subsequent mishandling of the escrowed monies constituted a supervening cause, and therefore the proximate cause, of plaintiffs' injury. The district court specifically held that the defendants had met Henry's three part test, and were therefore entitled to summary judgment. Our study of the matter leads us to conclude that, although the defendants may well have met the first two parts of the Henry test, the third part was not met, and, accordingly, summary judgment for the defendants was not proper.
 
 
 12
 In Henry, regarding this third part of the test--i.e. the "reasonably foreseeable" requirement--we stated:
 
 
 13
 [F]oreseeability is the standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested. Atherton v. Devine, 602 P.2d 634, 636 (Okla.1979). We find no evidence in this case that could support a finding that Kelco [the chemical company] could reasonably have foreseen that Ms. Jones [the employee] would steal the acid and use it as a weapon. Ms. Jones was a model employee who never gave any indication of criminal propensities, and there was no showing that acid was the sort of material that would typically be subject to theft or used as a weapon.
 
 
 14
 Henry, 877 F.2d at 1495 (footnote omitted).
 
 
 15
 Thus, as concerns the third part of the Henry test, the question is whether Merrico's mishandling of the escrowed monies was "reasonably foreseeable" by the defendants. At the outset of our consideration of the matter, we note, and emphasize, that the escrow agreement between the Bank and Merrico was for the benefit of these plaintiffs and the others investing in Merrico's fund program.[5] The escrow agreement was an important part of Merrico's sales program and was designed to give some sense of security to investors. Indeed, the escrow agreement assured investors that money put into escrow would not be disbursed to Merrico, or into any of the Funds, until certain conditions were met, and, as indicated, for the purposes of their motions for summary judgment, the defendants concede that the Bank disbursed escrow funds prematurely--i.e. before all the conditions were met.
 
 
 16
 From the record before us, it would appear that the Bank, its Directors, and Ward S. Merrick III were not strangers. Merrick was a shareholder in the Bank and had served on its Board of Directors from February 1979, to May 1990.[6] Further, the Bank had loaned either to Merrick or his enterprises sums in excess of $1,000,000, such loans constituting approximately one-third of the Bank's net worth in 1986.[7] Also, in their reply brief in support of their motion for summary judgment, the Directors apparently admit that six of the nine members of the Bank's Board of Directors were shareholders in Merrico, Inc., which is the parent company of Merrico Resources and Merrico Investments.[8] There is also evidence that the Directors and Merrick had substantial interests in the Bank's holding company, Bancshares. Furthermore, the appellants assert that Merrick had previously misused escrowed monies by using them as security for loans made to him by the Bank.
 
 
 17
 These facts, inter alia, make the instant case distinguishable from Henry. In Henry, the employee, Ms. Jones, was a "model employee who never gave any indication of criminal propensities, and there was no showing that acid was the sort of material that would typically be subject to theft or used as a weapon." Henry, 877 F.2d at 1495 (footnote omitted). Here, the record indicates that Merrick and Merrico were not "model or typical borrowers" and may well have had "propensities" to misuse escrowed monies. And, escrowed monies were of the type subject to misuse, especially since the escrow agreement was entered into to provide would-be investors with assurances that misuse would not occur.
 
 
 18
 Without going into further detail, we conclude that the record before the district court did not warrant the grant of summary judgment for the defendants on the ground that the Bank and its Directors could not, as a matter of law, "reasonably foresee" that by not following the escrow agreement and prematurely disbursing the escrowed money Merrico would mismanage the money to plaintiffs' loss. See Strong v. Allen, 768 P.2d 369, 371 (Okla.1989) (holding that it was reasonably foreseeable that a father's inattention, while transferring clothes from a washer to a dryer, could lead to a small child injuring himself on exposed chains and sprockets behind a clothes dryer); Lay v. Dworman, 732 P.2d 455, 459-60 (Okla.1987) (holding that a landlord was negligent for failing to secure a tenant's door and windows with locks when he took on the responsibility to do so; thus, the rape or a similar crime was reasonably foreseeable); Brigance v. Velvet Dove Restaurant, Inc., 725 P.2d 300, 305 (Okla.1986) (holding that a jury could find that it was reasonably foreseeable that selling liquor to a visibly intoxicated patron could result in an automobile accident); Minor v. Zidell Trust, 618 P.2d 392, 394 (Okla.1980) (holding that it was not reasonably foreseeable that a motorist would lose consciousness, causing his vehicle to smash through the rooftop parking facility and land on the street below).
 
 
 19
 The plaintiffs identified sufficient specific information in order to meet the defendants' motions for summary judgement, showing that there are genuine issues to be addressed by a jury at trial. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Indeed, the relationship between the Bank, its Directors, and Merrick was such as to preclude summary judgment.[9]
 
 
 20
 By this opinion we are not indicating the ultimate outcome of the controversy, but we are holding that, on the record before it, the district court erred in granting summary judgment for the defendants on the ground that their premature release of the escrow monies could not, as a matter of law, be a proximate cause of plaintiffs' injuries.
 
 
 21
 Judgment REVERSED.
 
 ATTACHMENT
 
 22
 Paragraph 3 of the escrow agreements provide:
 
 
 23
 3. Terms of Escrow.
 
 
 24
 (a) Each Fund's Subscriptions will be held by the Escrow Agent in a passbook savings account and will not be released to MERRICO until such time as the Escrow Agent determines that either (i) the subscription period has ceased and at least the minimum Fund Subscription ($1,000,000) (the "Minimum") has been received in the Escrow Account as evidenced by cleared funds in the Escrow Account and that Fund has been formed, or (ii) that the subscription period has ceased, the Minimum has not been secured, and that Fund will not be formed, or (iii) the date upon which a decision is made by the Company and the Dealer-Manager to terminate the subscription period prior to the sale of the Minimum.
 
 
 25
 (b) In the event the Escrow Agent determines that the contingency provided in paragraph 3(a)(i) above has been met, the Escrow Agent shall release the escrowed Fund Subscription as follows:
 
 
 26
 (1) A sum of up to nine percent of the Fund Subscription as determined by MERRICO shall be delivered to MERRICO INVESTMENTS, as Dealer-Manager; and
 
 
 27
 (2) The balance of the Fund Subscription, plus interest earned thereon, shall be delivered to MERRICO, as General Partner of that Fund.
 
 
 28
 (c) In the event the contingency set forth in paragraph 3(a)(i) above has not been met, the Escrow Agent shall refund to each subscriber his Subscription, plus interest thereon, penalty, deduction for Sales Commission or any other expense, and the Escrow Agent shall notify the Company and the Dealer-Manager of its distribution of the funds. Any monies returned to subscribers shall be free and clear of any and all claims of the Company, the Funds or any of their creditors.
 
 
 29
 ....
 
 
 30
 (emphasis added).
 
 
 
 *
 Honorable Richard Owen, Senior District Judge, for the Southern District of New York, sitting by designation
 
 
 [1]
 Plaintiffs' claims were based on the Racketeer Influenced and Corrupt Organizations Act, breach of contract, breach of fiduciary duty, negligence, tortious interference with contractual and/or prospective advantage, aiding and abetting, negligence and/or breach of common law duties of bank Directors and breach of statutory duty and/or the Directors' oath of office to conduct thorough examinations
 Plaintiffs also sought certification as a class. Counsel asserts that the request for certification was summarily denied by the district court when counsel was late for a hearing. However, the plaintiffs, on appeal, have not challenged the district court's denial of their request for class certification. Accordingly, the record before us does not contain the district court's order denying class certification.
 
 
 [2]
 Plaintiffs' investments were in the form of checks made payable to "First Community Bank, Escrow Agent" and sent to Merrico for delivery to the Bank
 
 
 [3]
 Merrico Resources, Inc. filed bankruptcy in August, 1990. Ward S. Merrick III filed bankruptcy as well, although there is nothing in the record specifying a particular date
 
 
 [4]
 Paragraph 3(a)(1) of the escrow agreement provided that each Fund's subscriptions would be held by the Bank and would not be released to Merrico until such time as the Bank determined that the subscription period had run, that there had been at least $1,000,000 received by the Bank, and that the Fund had been formed (which meant that a limited partnership certificate had been filed by Merrico as required by the Oklahoma Revised Uniform Limited Partnership Act). As indicated, for the purposes of the defendants' motions for summary judgment, the defendants conceded that the Bank disbursed the escrowed monies to Merrico before the subscription period had run and before any Fund had been formed
 
 
 [5]
 In Henry, we observed that Oklahoma negligence jurisprudence recognizes only two types of special circumstances that create a duty to anticipate and prevent the acts of a third party, to wit: (1) where the actor is under a special responsibility towards the one who suffers the harm; and (2) where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk or harm through such misconduct, which a reasonable man would have taken into account. Henry, 877 F.2d at 1492 (citing Joyce v. M & M Gas Co., 672 P.2d 1172, 1174 (Okla.1983)). As to some of the plaintiffs' claims in the instant case, this special duty may apply
 
 
 [6]
 In their answers to the plaintiffs' amended complaint, the Bank and Directors admitted the following: (1) Merrick was a member of the Bank's Board of Directors from February 11, 1979, until May 7, 1990; (2) Merrick was a member of the Board of Directors of Bancshares (the Bank's holding company) from May 13, 1980, until May 7, 1990; (3) Merrick acquired 400 shares of stock in the Bank on April 10, 1981, which he transferred to Bancshares on May 30, 1990; (4) Merrick acquired 5,822 shares of common stock in Bancshares on or before November 9, 1984, which he transferred to Merrico, Inc. on December 6, 1986; and (5) Merrick acquired 30,000 shares of common stock in Bancshares on or before August 23, 1983, which he transferred to Merrico, Inc. on April 8, 1987
 
 
 [7]
 Plaintiffs' expert, Mr. Stuart, testified in his deposition that Merrico enterprises were responsible for approximately 60% of the Bank's net income in 1988 and 25% in 1989
 
 
 [8]
 The plaintiffs assert that seven of the nine Directors were shareholders in Merrico, Inc
 
 
 [9]
 Although it was not mentioned by the district court, it would appear that under paragraph 3(c) of the escrow agreement the Bank, where the conditions set forth in paragraph 3(a)(i) had not been met, had a duty to "refund to each subscriber his [s]ubscription."