Johnnie E. ROMO, Plaintiff–Appellant,

and

Marilyn Romo and Misty D. Gardner, Plaintiffs,

v.

Ron CHAMPION; Bill McKenzie; Gary Maynard; Oklahoma Highway Patrol; Osage County Sheriff's Office; Pawhuska County Sheriff's Office; and Hominy City Police, Defendants–Appellees.

Nos. 93–6307, 93–6317.

United States Court of Appeals, Tenth Circuit.

Jan. 31, 1995.

Michael Salem, of Salem Law Offices, Norman, OK, for appellants.

Gayla I. Fields, Lee, Collins & Fields, Oklahoma City, OK (David W. Lee, with her on the briefs, for appellees Osage County Sheriff's Office and Hominy City Police Dept.). Bill Heskett and Stephen A. Lamirand of Heskett & Heskett, Pawhuska, OK, were also on the briefs, for appellee City of Hominy.

Guy L. Hurst, Asst. Atty. Gen., Oklahoma City, OK (Susan B. Loving, Atty. Gen., and Linda K. Soper, Asst. Atty. Gen., Oklahoma City, OK, were on the briefs), for appellees Champion, Evans, Maynard, McKenzie, Ariss and Watson.

Cara Epps Clifton, Dept. of Public Safety, Oklahoma City, OK, filed a brief, for appellee Oklahoma Highway Patrol and non-parties Croy, Waldon and Roberts.

Johnnie E. Romo and Marilyn L. Romo, filed pro se briefs.

Before TACHA and SETH, Circuit Judges, and LUNGSTRUM, District Judge[†]

TACHA, Circuit Judge.

Plaintiffs Marilyn Romo and her daughter, Misty Gardner, filed suit alleging that defendants Ron Champion, Bill McKenzie, Gary Maynard, the Oklahoma Highway Patrol, the Osage County Sheriff's Office, the Pawhuska County Sheriff's Office, and the Hominy City Police violated their constitutional rights in violation of 42 U.S.C. § 1983. They now appeal the district court's order granting defendants' motion for summary judgment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

The relevant facts as alleged by plaintiffs are as follows. On September 2, 1989, plaintiffs Romo and Gardner were stopped at a roadblock near the entrance to Dick Conner Correctional Center in Hominy, Oklahoma. Ms. Romo was driving to the correctional center to visit her husband, Johnnie Romo, a prison inmate. The roadblock was jointly conducted by the Oklahoma Highway Patrol, the Hominy Police Department, the Osage County Sheriff's Office, and Dick Conner Correctional Center security personnel. The roadblock itself was outside the perimeter of the prison grounds on an access road,[1] but the road leads only to the prison parking lot.

---

[†] The Honorable John W. Lungstrum, United States District Judge for the District of Kansas, sitting by designation.

1. Defendants contend that the roadblock was on prison grounds. On an appeal from an order granting summary judgment, we view all disputed facts in the light most favorable to the non-

After being stopped at the roadblock, Ms. Romo was asked to turn off her vehicle's ignition, open the doors and trunk of the car, and return to her seat inside the car. Romo and her daughter remained seated in the car while a drug interdiction canine sniffed the vehicle. The dog also sniffed both plaintiffs' bodies during its sweep of the vehicle.[2] The dog alerted to Ms. Romo, indicating the presence of a narcotic on her person. Ms. Romo was then asked to consent to a strip search, and she signed a written form consenting to the search. Two female officers conducted the strip search and discovered marijuana in Ms. Romo's possession.

Plaintiffs filed a civil rights claim pursuant to 42 U.S.C. § 1983, alleging that defendants violated their Fourth Amendment right to be free from unreasonable searches and seizures. Defendants moved for summary judgment. The district court referred the matter to a magistrate judge, who recommended that defendants' motion be granted. After a de novo review of the pleadings and the record, the district court adopted the magistrate's recommendation and issued an order granting summary judgment to defendants.

Plaintiffs appeal the district court's order on three grounds. First, they contend that the initial stopping of their car at the roadblock was an unconstitutional seizure. Second, they claim that the search and canine sniff of their vehicle and the sniff of their bodies at the roadblock were unconstitutional searches. Finally, they assert that the strip search of Ms. Romo was unconstitutional because the officers obtained her consent coercively.

## II. Discussion

Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We review a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party. *Calandro v. First Community Bank & Trust*, 991 F.2d 640, 642 (10th Cir.1993).

### A. The Stop of Plaintiffs' Car at the Roadblock

▇ As a preliminary matter, we must acknowledge that the roadblock at issue here differed significantly from a roadblock stopping all motorists on an ordinary public thoroughfare. Because of its location, defendants' roadblock only stopped motorists attempting to enter the Dick Conner Correctional Center; it therefore served as an element of the prison's overall security operation. As a reviewing court, we must largely defer to the judgment of prison administrators in matters of institutional security. *Whitley v. Albers*, 475 U.S. 312, 321–22, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986); *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). As the Supreme Court has stated, "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547, 99 S.Ct. at 1878. Prison administrators' responsibility for maintaining security includes the duty to "intercept and exclude by all reasonable means all contraband smuggled into the facility." *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir.1982); *see also Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir.1977) (stating that prison authorities' "prime consideration is the preservation of the safety and security of the prison," which includes the "duty to intercept narcotics and other harmful contra-

---

moving party. *Calandro v. First Community Bank & Trust Co.*, 991 F.2d 640, 642 (10th Cir. 1993). Thus, for purposes of this appeal, we assume the roadblock was located outside the perimeter of the prison.

2. Defendants dispute the allegation that the dog actually sniffed plaintiffs' persons. Again, on appeal from a grant of summary judgment, we view the record in the light most favorable to the nonmoving party. *Calandro*, 991 F.2d at 642.

band" being smuggled into the facility by visitors), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). We therefore review the constitutionality of the detention of plaintiffs' car at the roadblock with significant deference to the judgment of prison officials.

 The stop of a vehicle at a roadblock on a public thoroughfare is clearly a seizure within the meaning of the Fourth Amendment. *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). But the Fourth Amendment forbids only those seizures that are "unreasonable." U.S. Const. amend. IV. In determining whether the stop of plaintiffs' vehicle was unreasonable, we must evaluate the circumstances of the stop and the relevant interests at stake. Our analysis is guided by the three-part test articulated by the Supreme Court in *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). *Sitz,* 496 U.S. at 450, 110 S.Ct. at 2485. Under *Brown,* the constitutionality of a stop depends on "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown,* 443 U.S. at 50–51, 99 S.Ct. at 2640.

 In addressing the public concern served by the roadblock, the magistrate identified the relevant governmental interest as "ensuring that no illegal narcotics enter its prisons." More broadly, the government's interest was to maintain the institutional security of the prison. These are unquestionably matters of significant public concern. *See Bell,* 441 U.S. at 546–47, 99 S.Ct. at 1877–78 (stating that "maintaining institutional security and preserving internal order and discipline are essential goals" of prison administration). Thus, the first element of the balancing test weighs heavily in the government's favor.

 The second prong of the *Brown* test requires us to evaluate the degree to which the stop of plaintiffs' car served these governmental interests. As a reviewing court, our task is to decide not whether the government chose the best possible alternative to advance its objectives but only whether the chosen method was reasonably designed to achieve those goals. *Sitz,* 496 U.S. at 453–54, 110 S.Ct. at 2486–87. Moreover, we cannot " 'substitute our judgment on ... difficult and sensitive matters of institutional administration' for the determinations of those charged with the formidable task of running a prison." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 353, 107 S.Ct. 2400, 2406, 96 L.Ed.2d 282 (1987) (citation omitted) (quoting *Block v. Rutherford,* 468 U.S. 576, 588, 104 S.Ct. 3227, 3233, 82 L.Ed.2d 438 (1984)). In this case, there was a relatively close fit between the government's interrelated ends—drug interdiction and prison security—and the means it selected to effectuate them: The roadblock briefly detained each vehicle entering the prison only to facilitate a drug-sensing dog's sweep of the car and its occupants. In light of the deference we must afford prison officials in their efforts to preserve institutional security, we believe that the roadblock was reasonably designed to advance the government's interests.

Finally, we must consider the seizure's infringement on plaintiffs' personal liberty. Given the governmental interests at stake, the interference with plaintiffs' freedom was not significant. Again, only those vehicles attempting to enter the prison were stopped, and each car was detained for only a few minutes. Under these circumstances, the restriction of personal liberty was not substantial.

In sum, the three-part *Brown* balancing test clearly weighs in favor of the government: The public interest in keeping drugs out of prisons and maintaining prison security is substantial, the roadblock was reasonably tailored to achieve these objectives, and the interference with plaintiffs' individual liberty was not significant. The stop of plaintiffs' vehicle therefore did not violate the Fourth Amendment.

**B. The Search Conducted at the Roadblock**

Plaintiffs next contend that the initial search conducted by defendants at the roadblock was an unreasonable search prohibited by the Fourth Amendment. The search con-

sisted of ordering Ms. Romo to open the doors and trunk of the car, the dog's sniff of the vehicle, and the dog's sniff of Ms. Romo's and Misty Gardner's bodies. Plaintiffs also allege that, while the dog was sniffing Misty Gardner, its nose touched "the private area of [her] lap."

It is well-established that an individual's privacy interest in her automobile is constitutionally protected. *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068, 85 L.Ed.2d 406 (1985). And this protection clearly extends to a car's trunk. *See California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (holding that same Fourth Amendment standards apply to all vehicle searches regardless of the particular area searched, including searches of a car's trunk). By ordering Ms. Romo to open the doors and trunk of her car—independent of the sniff of their persons by the drug-sensing dogs—the conduct of defendants certainly infringed on plaintiffs' constitutionally protected privacy interests. Thus, if defendants had executed the search for traditional law enforcement purposes, they presumptively would have needed probable cause. *See Arizona v. Hicks*, 480 U.S. 321, 327, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987) (holding that, absent "special operational necessities," probable cause is presumptively required).

Government officials do not need probable cause to conduct a search, however, "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 747, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring)). In the presence of such special governmental needs, "it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665–66, 109 S.Ct. 1384, 1390–91, 103 L.Ed.2d 685 (1989); *see also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989) (where search is justified by special needs, a reviewing court must "balance the governmental and privacy interests to assess the practicality of the warrant and probable-cause requirements in the particular context").

■ We therefore evaluate the constitutionality of a "special needs" search under the Fourth Amendment's more general requirement of reasonableness, *Von Raab*, 489 U.S. at 665–66, 109 S.Ct. at 1390–91, "balancing the need to search against the invasion which the search entails," *Camara v. Municipal Court*, 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967). And whether a particular search "is reasonable depends on the context within which [the] search takes place." *T.L.O.*, 469 U.S. at 337, 105 S.Ct. at 740. Thus, the appropriate inquiry in each specific case is "whether the government's need outweighs the individual's privacy interest." *Dunn v. White*, 880 F.2d 1188, 1193 (10th Cir.1989), *cert. denied*, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990). That is, we assess whether the asserted government interest "justifies the privacy intrusions at issue absent a warrant or individualized suspicion." *Skinner*, 489 U.S. at 621, 109 S.Ct. at 1415.

■ There can be little doubt that the search conducted by defendants in this case was executed pursuant to special needs independent of traditional criminal law enforcement. As this court stated in *Dunn*, "[t]he government's interest in the operation of a prison presents 'special needs' beyond law enforcement that may justify departures from the usual warrant and probable-cause requirements." 880 F.2d at 1194 (internal quotation omitted). The purpose of the search here was to intercept narcotics that prison visitors were attempting to take to inmates. As we have stated, the duty to keep drugs out of a prison is part of prison administrators' responsibility to maintain a correctional center's institutional security. *Newman*, 559 F.2d at 291. We therefore must apply the balancing test required by the reasonableness clause of the Fourth Amendment: The search conducted at the roadblock was constitutional if the government's interest in keeping narcotics out of

the prison outweighed the intrusion on plaintiffs' privacy interests.

In applying this balancing test to the search at issue here, three factors are particularly significant. First, because they were visiting a prison, plaintiffs' expectations of privacy were "diminished by the exigencies of prison security." *Blackburn v. Snow,* 771 F.2d 556, 563 (1st Cir.1985); *see also Boren v. Deland,* 958 F.2d 987, 988 (10th Cir.1992). Although persons visiting a prison possess "a legitimate expectation of privacy," *Boren,* 958 F.2d at 988, they " 'cannot credibly claim to carry with them the full panoply of rights they normally enjoy,' " *id.* (quoting *Blackburn,* 771 F.2d at 563). Thus, the intrusion on plaintiffs' privacy was significantly less than it would have been had the search been conducted outside the context of a prison security operation. Second, as we have discussed, the governmental objectives in conducting the search were substantial; the government has a "paramount interest in [a prison's] institutional security," *Hudson v. Palmer,* 468 U.S. 517, 528, 104 S.Ct. 3194, 3201, 82 L.Ed.2d 393 (1984), and intercepting narcotics is certainly a reasonable element of a prison's security operation, *Hunter,* 672 F.2d at 674. Third, as we stated earlier, prison authorities must be afforded wide-ranging discretion in adopting policies designed to preserve institutional security. *Whitley,* 475 U.S. at 321–22, 106 S.Ct. at 1085.

Considering all of the circumstances surrounding the search at the roadblock, we find that each element of the procedure comported with the Fourth Amendment's requirement of reasonableness. First, although the opening of the vehicle's doors and trunk was an invasion of Ms. Romo's protected privacy interest in her car, the officers did not physically search through the car or trunk; rather, opening the door and trunk merely facilitated the dog's sweep of the vehicle. Given plaintiffs' reduced expectation in privacy, this was reasonable when balanced against the government's strong interest in keeping narcotics out of the prison.

Next, the dog's sweep of the vehicle did not infringe on any constitutionally protected privacy interest. As this court recognized in *United States v. Morales–Zamora,* 914 F.2d 200 (10th Cir.1990), "when the odor of narcotics escapes from the interior of a vehicle, society does not recognize a reasonable privacy interest in the public airspace containing the incriminating odor." *Id.* at 205. Where government officials have lawfully detained a vehicle, a dog's sniff "is not a 'search' within the meaning of the fourth amendment." *Id.* at 203; *see also United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (holding that the exposure of an individual's luggage, which was located in a public place, to a drug-sensing dog was not a search for purposes of the Fourth Amendment).

■ Finally, while the dog's sniff of plaintiffs' bodies was clearly more intrusive than its sniff of the vehicle, it nevertheless was reasonable in light of all the relevant circumstances. Again, plaintiffs' expectations in privacy were reduced because they were visiting a prison, and a dog's sniff of the area surrounding one's body is not terribly intrusive. To the extent that the dog's nose physically touched Misty Gardner, that contact was purely incidental. Such a brief, unintentional touch cannot make an otherwise reasonable search unconstitutional. In sum, while elements of the defendants' conduct at the roadblock clearly infringed on plaintiffs' privacy interests, that intrusion was outweighed by the significant governmental interests at stake.

Plaintiffs plausibly argue that the procedure at the roadblock was *per se* unreasonable because defendants lacked individualized reasonable suspicion when they conducted the search. Indeed, in most cases in which the Supreme Court has upheld warrantless searches conducted without probable cause, the government has possessed at least individualized suspicion, even where the search was executed pursuant to special governmental needs. *See, e.g., Griffin,* 483 U.S. at 872–73, 107 S.Ct. at 3167–68 (upholding warrantless search of a probationer's home in context of state's special need in operating its probation system where search was carried out pursuant to state regulation requiring "reasonable grounds"); *T.L.O.,* 469 U.S. at 342, 105 S.Ct. at 743 (holding that, in context

of state's special need of preserving school discipline, a search of a student by school authorities is constitutional "when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school"); *cf. O'Connor v. Ortega,* 480 U.S. 709, 725, 107 S.Ct. 1492, 1501, 94 L.Ed.2d 714 (1987) (holding that individualized suspicion may have justified warrantless search of government employee's office by supervisor executed pursuant to work-related, noninvestigatory reasons or to uncover work-related employee misconduct). Nevertheless, the Supreme Court has made clear that individualized suspicion is not a constitutional prerequisite in all cases. *United States v. Martinez–Fuerte,* 428 U.S. 543, 560–61, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976).[3] "[A] showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable." *Skinner,* 489 U.S. at 624, 109 S.Ct. at 1417; *see also Martinez–Fuerte,* 428 U.S. at 560–61, 96 S.Ct. at 3084 (stating that, while "some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] ... the Fourth Amendment imposes no irreducible requirement of such suspicion") (citation and footnote omitted). This court likewise stated in *Dunn* that " '[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.' " 880 F.2d at 1193 (quoting *Skinner,* 489 U.S. at 624, 109 S.Ct. at 1417).

Plaintiffs also point out that other courts have stated that the Fourth Amendment requires individualized reasonable suspicion for searches of prison visitors. For instance, in *Spear v. Sowders,* 33 F.3d 576 (6th Cir.1994), the Sixth Circuit recently stated that "the

'reasonable suspicion' standard ... [applies] to official searches of citizens who are visiting inmates." *Id.* at 580 (citation omitted). But every decision establishing a reasonable suspicion standard for searches of prison visitors has involved a strip search. *See, e.g., Spear,* 33 F.3d at 582 (officials performed visual and manual body cavity searches); *Cochrane v. Quattrocchi,* 949 F.2d 11, 12–13 (1st Cir.1991) (prison visitor strip searched), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Daugherty v. Campbell,* 935 F.2d 780, 782 (6th Cir.1991) (officials performed visual body cavity search), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992); *Thorne v. Jones,* 765 F.2d 1270, 1271 (5th Cir.1985) (prison visitor strip searched), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 313 (1986); *Hunter,* 672 F.2d at 674 ("[T]he Constitution mandates that a reasonable suspicion standard govern strip searches of visitors to penal institutions."). A strip search is a far cry from the routine, rather nonintrusive search initially conducted by defendants at the roadblock. As this court has stated, the strip search of an individual by government officials, " 'regardless how professionally and courteously conducted, is an embarrassing and humiliating experience.' " *Boren,* 958 F.2d at 988 n. 1 (quoting *Hunter,* 672 F.2d at 674). Requiring reasonable suspicion for strip searches of prison visitors is not inconsistent with our holding today that the routine preliminary search of plaintiffs and their vehicle, although executed without individualized suspicion, was reasonable.

Weighing the government's interest in preventing narcotics from being smuggled into penal institutions against the intrusion on plaintiffs' privacy in this case, we find that defendants' initial investigative procedure at the roadblock was reasonable. As a result, the initial search at the roadblock did not

---

**3.** Indeed, even in *Griffin, T.L.O.,* and *O'Connor* the Court did not hold that individualized suspicion was an essential element to a constitutional search in their respective contexts. *See Griffin,* 483 U.S. at 875–76, 107 S.Ct. at 3169 (holding merely that a search conducted pursuant to valid regulation requiring "reasonable grounds" was constitutional); *O'Connor,* 480 U.S. at 726, 107

S.Ct. at 1502 ("[W]e need not decide whether individualized suspicion is an essential element of the standard of reasonableness that we adopt today."); *T.L.O.,* 469 U.S. at 342 n. 8, 105 S.Ct. at 743 n. 8 ("We do not decide whether individualized suspicion is an essential element of the reasonableness standard we adopt for searches by school authorities.").

violate plaintiffs' rights under the Fourth Amendment.

## C. The Strip Search of Ms. Romo

 Finally, plaintiffs contend that the strip search of Ms. Romo was unconstitutional because the officials conducting the search coerced Ms. Romo into signing the written consent form. Plaintiffs assert that, after the drug-sniffing dog alerted, the officials demanded that she submit to a strip search before entering the prison. If Ms. Romo's consent to the search was necessary and was obtained coercively, the strip search may indeed have been unconstitutional. But if the officials were authorized to strip search Ms. Romo without her consent, any alleged coercion is legally irrelevant.

As discussed above, other circuits assessing the constitutionality of subjecting prison visitors to strip searches have held that the Fourth Amendment requires individualized reasonable suspicion. *See, e.g., Daugherty,* 935 F.2d at 787; *Thorne,* 765 F.2d at 1277; *Hunter,* 672 F.2d at 674. While not holding that this standard was constitutionally required, this court ruled in *Boren* that a strip search of a prison visitor "supported by reasonable suspicion is constitutionally permissible." 958 F.2d at 988.

In this case, the dog alerted to plaintiff Romo while sniffing her person. This court has held "in several cases that a dog alert without more [creates] probable cause for searches and seizures." *United States v. Ludwig,* 10 F.3d 1523, 1527 (10th Cir.1993) (citations omitted); *see also United States v. Klinginsmith,* 25 F.3d 1507, 1510 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 602 (1994) (No. 94–816); *United States v. Chavira,* 9 F.3d 888, 890 (10th Cir.1993). If a dog's alert gives authorities probable cause to conduct a search, it certainly satisfies the lesser standard of reasonable suspicion. Thus, after the dog alerted to Ms. Romo, prison officials possessed at least reasonable suspicion that she was concealing narcotics. Consequently, ordering her to submit to a strip search before entering the prison was clearly constitutional.

## III. Conclusion

We find that defendants' actions in this case did not violate plaintiffs' rights guaranteed by the Fourth Amendment. The initial seizure of plaintiffs' vehicle was constitutional under the three-part *Brown* balancing test; the preliminary search of plaintiffs' vehicle at the roadblock, after weighing the government's interest in prison security and the intrusiveness of the procedure, was reasonable; and the strip search of Ms. Romo was supported by individualized reasonable suspicion and was therefore constitutional. For these reasons, we find no error in the district court's order granting defendants' motion for summary judgment. **AFFIRMED.**