Kevin GRAY; Marsha Gray, Plaintiffs–Appellants,

v.

L.E. BRUCE, Warden, Hutchinson Correctional Facility; Charles E. Simmons, KDOC Secretary of Corrections; Mary Nelson, I & I Security Officer, Hutchinson Correctional Facility; Sam Cline, Deputy Warden, Hutchinson Correctional Facility; William L. Cummings, Secretary of Corrections designee and risk management for

KDOC, Hutchinson Correctional Facility; (FNU)(LNU), two unknown Hutchinson Correctional Officers, Defendants–Appellees.

No. 01–3090.

United States Court of Appeals, Tenth Circuit.

Dec. 12, 2001.

Before KELLY, BALDOCK, and LUCERO, Circuit Judges.

---

## ORDER AND JUDGMENT *

PAUL KELLY, Jr., Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Kevin and Marsha Gray, who are husband and wife and who appear pro se and in forma pauperis, appeal from the dismissal of their civil rights complaints brought pursuant to 42 U.S.C. § 1983. The district court consolidated and then dismissed their suits under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Because we conclude that the district court prematurely dismissed certain of their claims, we affirm in part, reverse in part, and remand for further proceedings.

## I. Relevant facts

The consolidated complaints are based on Mrs. Gray's attempt on November 13, 1999, to visit Mr. Gray, who is a state prisoner incarcerated at the Hutchinson Correctional Facility. Kansas Department of Corrections internal management rules require prospective contact visitors at certain facilities to submit to a skin swab that is then tested for the presence of illegal drugs by means of an ion spectrometer.[1] If the skin swab tests positive for illegal drugs, the visitor is required to consent to a "back-scatter body scan," a strip search, or both. R. Case No. 00–3148, Doc. 1, Ex. C, at 1 (Hutchinson Correctional Facility General Order § 09–107). According to the rules, the visitor may refuse to consent to further search and leave the prison facility, but

> [r]efusal to consent and submit to a search shall be sufficient cause for the warden to:
>
> 1. SUSPEND VISITING PRIVILEGES, AND REMOVE THE VISITOR'S NAME FROM THE INMATE'S visiting list for a one (1) year period and

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. In ion spectrometer testing, a damp cotton swab is rubbed against the clothing or skin of an individual and then placed in a machine for analysis. "According to the Federal Bureau of Prisons, *Drug Free Prison Zone Project* (July 1998), the basis of ion drug and explo-

sives detection technology is the collection and vaporization of atmospheric particulate; ionized vapors drift through the ion mobility spectrometer at different speeds, depending on their structure and size, and the speed at which the ions move provides a distinct 'thumbprint' that identifies the original substance. An alarm alerts the machine operator when a 'thumbprint' for a known drug or explosive has been detected." *United States v. Belwood*, 222 F.3d 403, 405 n. 5 (7th Cir. 2000).

restrict visiting privileges to non-contact visiting for [a] six (6) month period following the suspension.

*Id.* Ex. B, at 8 (Internal Management Policy & Procedures § 12–115).

After Mrs. Gray tested positive for heroin based on the skin swab test on November 13, 1999, she refused to submit to the strip search that was set as a condition of visitation and left the facility. She and Mr. Gray were then notified that her visitation privileges had been suspended for a year.

Mrs. Gray alleged that the swab procedure violated her Fourth Amendment right to be free from unreasonable searches and seizures and that the prison policy requiring her to submit to a strip search or lose her visitation privileges violated her Fifth Amendment right to be free from self-incrimination. She alleged that her due process rights were also violated because the swab search was conducted in a manner allowing cross-contamination between prior visitors who tested positive, the guards' unwashed hands, and her swab sample, causing totally unreliable results and proving that the State had no legitimate penological interest in conducting the search.

Mr. Gray is African–American and Mrs. Gray is Caucasian. Both Mr. and Mrs. Gray alleged that the individual defendants conspired to racially discriminate against them because a similar suspension of visitation privileges was not imposed against Caucasian prisoners with Caucasian visitors under parallel circumstances. As support for this contention, both plaintiffs listed the names of several Caucasian prisoners whose Caucasian visitors tested positive for drugs and who refused to submit to a strip search, but whose visitation privileges were either not suspended or were suspended for only four to six months instead of for one year. *See* R.

Case No. 00–3148, Doc. 1 at 22; R. Case No. 00–3133, Doc. 1 at 45.

The district court dismissed all claims. First, after concluding that neither Mr. nor Mrs. Gray have a constitutional right to prisoner visitation, the court held they had failed to state a claim for violation of their due process rights. Next, the court rejected the argument that no legitimate security interest was advanced by the spectrometer screening, holding that no evidence existed that prison officials had abused their discretion regarding manners of internal security. The court further held that any impact to Mrs. Gray's privacy interests by use of the swab screening test was clearly outweighed by the prison's significant security concerns, rejecting her Fourth Amendment claim. Finally, the court rejected the conspiracy claims, finding that plaintiffs had failed to allege constitutional deprivations and that their "allegations of discrimination and retaliation by defendants are conclusory at best." R. Case No. 00–3133, Doc. 5 at 5. The court did not order a *Martinez* report. *See Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir.1978) (approving order requiring prison officials to investigate facts surrounding inmate's civil rights suit in order to construct an administrative record from which court may decide jurisdictional issues and make determination of frivolity under § 1915).

## II. Discussion

### A. Standard of review.

■ We review de novo the district court's dismissal of the complaints under § 1915(e)(2). *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir.1999). In doing so, we accept as true the plaintiffs' factual allegations, viewing them in the light most favorable to the plaintiffs. *Id.* "Dismissal of a pro se complaint for

failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Id.*

### B. Mrs. Gray's Fourth Amendment claim.

■ We agree with the district court that Mrs. Gray's privacy interests when visiting a prison facility are greatly diminished; that prison visitors may be subjected to searches as a condition of their visitation; that the non-invasive swab search using an ion spectrometer was a minimal intrusion upon Mrs. Gray's privacy; and that the State has a duty and a strong interest in keeping drugs out of prisons. Balancing these interests, we hold, as a matter of law, that subjecting Mrs. Gray to a swab search was not a *per se* violation of her Fourth Amendment right to be free from unreasonable searches. *See Romo v. Champion,* 46 F.3d 1013, 1017–18 (10th Cir.1995) (stating that the search of a prison visitor is "constitutional if the government's interest in keeping narcotics out of the prison outweighed the intrusion on plaintiffs' privacy interests" and holding that a dog sniff of plaintiffs' bodies "was reasonable in light of all the relevant circumstances").

### C. Mrs. Gray's substantive due process claim.

■ Mrs. Gray's claim that her due process rights were violated by the manner in which the spectrometer search was conducted is properly analyzed under the Fourth Amendment standard rather than under a substantive due process standard. *Lawmaster v. Ward,* 125 F.3d 1341, 1351 n. 4 (10th Cir.1997).

In *Romo,* we stated that when a prison visitor challenges the constitutionality of a specific search or seizure conducted prior to a prison visit, the court must evaluate "the degree to which the seizure advances the public interest." 46 F.3d at 1016 (quotations omitted). We also observed that the question of whether a "search is reasonable depends on the context within which [the] search takes place." *Id.* at 1017 (quotation omitted) (alteration in original); *see also United States v. Perdue,* 8 F.3d 1455, 1462 (10th Cir.1993) ("Under the Fourth Amendment, the intrusiveness of a search or seizure will be upheld if it was reasonable under a totality of the circumstances.").

Other courts have suggested that an ion spectrometer search may be unreasonable if the results are unreliable. In *Mitchell v. Department of Corrections,* 675 So.2d 162, 165 (Fla.Ct.App.1996), for example, the court noted that, "if all persons entering the jail tested positive for cocaine [using an ion spectrometer] and were thereby subjected to the kind of intrusive testing and search that the statute was designed to control, there would be a basis to conclude that the [ion spectrometer] test was an unreasonable search."

■ Here, the district court failed to address Mrs. Gray's allegations that the particular procedure to which she was subjected was unreasonable and arbitrary because (1) the guards swabbed her arm four times before getting a positive result; (2) the guards' bare hands touched the skin and clothing of other individuals who may have tested positive for drug residue; (3) the guards did not wash their hands between swabbings or use rubber gloves; (4) the guards then touched the cloth disk used to swab her skin with their unwashed hands; (5) the cross-contamination caused a false positive result; and (6) this false result subjected her to an unfair choice between an extremely intrusive strip search and losing her state-law right to visit her husband for a year.

Mrs. Gray alleged sufficient facts to support her contention that the particular methods the guards used to search her were unreasonable because of the likelihood of cross-contamination[2] and that the method actually caused an unreliable and false result that lead to the choice between a further substantial invasion of her privacy rights or the loss of her visitation rights. She thus stated a claim for violation of her Fourth Amendment right to be free from an unreasonable search, the dismissal of which was premature.

D. Conspiracy to discriminate based on Mr. Gray's race and their interracial marriage.

We conclude that the district court likewise prematurely dismissed the Grays' discrimination claims. We agree with the district court that neither prisoners nor their visitors have a constitutional right to unfettered visitation. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). It has long been settled in this Circuit, however, that prison officials cannot discriminate against an inmate based upon his race in granting or withholding privileges and that such discrimination constitutes a violation of an inmate's right

to equal protection. *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir.1991)[3]. It is not a prerequisite to a claim for discrimination, therefore, that the privilege impermissibly denied on racial grounds is one of constitutional importance. The Grays' allegations that the one-year curtailment of their visitation privileges was racially motivated as demonstrated by the fact that Caucasian prisoners similarly situated were not subjected to the same punishment fits the classic mold of an equal protection claim cognizable under § 1983.

The district court dismissed the complaints without mentioning Mrs. Gray's claim that being forced to undergo the swab search violated her Fifth Amendment right to be free from self-incrimination. On remand, the court should not dismiss or grant summary judgment without addressing all claims. The judgment of the United States District Court for the District of Kansas is REVERSED, and the case is REMANDED for further proceedings consistent with this order and judgment.

---

**2.** We take judicial notice of a case in which an FBI agent/expert witness testified that some ion mobility spectrometers have "proven to be unreliable" and in which he also testified that, "even if the ion mobility spectrometer correctly characterized the [ ] residues, because no control swabs from the hands of the evidence collection personnel were submitted, a determination as to the source of the [ ] residues cannot be made." *Conlon v. United States*, 959 F.Supp. 683, 685 (D.N.J.1997). We also note that other § 1983 plaintiffs have alleged that law enforcement personnel, the scientific community, and the makers of ion spectrometers are aware that the devices "may provide a false positive reading for the presence of heroin in products of a high alkaline composition." *Ezenwa v. Gallen*, 906 F.Supp. 978, 988 (M.D.Pa.1995).

We mention these cases only to support our conclusion that Mrs. Gray has stated facts sufficient to support her contention that the swab search to which she was subjected was arbitrary and unreasonable, and not to express an opinion about the merits of her claim.

**3.** *Meese* involved a federal prisoner and his equal protection rights under the Fifth Amendment, but the same principles apply to state prisoners under the Fourteenth Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (*per curiam*) ("Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.").