705 So.2d 90 (1998)
Marvin DUPREE, Appellant,
v.
STATE of Florida, Appellee.
No. 96-0186.
District Court of Appeal of Florida, Fourth District.
January 7, 1998.
*91 Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda Melear, Assistant Attorney General, West Palm Beach, for appellee.

EN BANC
SHAHOOD, Judge.
Appellant, Marvin Dupree, seeks reversal of his conviction and sentence for three counts of possession of cocaine, three counts for the sale of cocaine, and one count of trafficking in cocaine. Because we find that each of the transactions of March 10, 1995, May 10, 1995, May 12, 1995, and June 1, 1995, were separate offenses, we find that the trial court erred in denying appellant's motion for severance. Thus, we reverse and remand for separate new trials on each of the offenses. Although rendered moot by this reversal, we find that the trial court did not err in denying appellant's motion for judgment of acquittal. We consider this case en banc in order to recede from this court's opinion in Williams v. State, 409 So.2d 253 (Fla. 4th DCA), rev. denied, 417 So.2d 331 (Fla.1982) to the extent that it conflicts with our decision here.
The following are the detailed relevant facts of this case.
At trial, Detective Gary Oliver of the Indian River Sheriff's Office testified that he participated in a series of controlled buys working with confidential informant, Jacob King. Sergeant Beverly Brame acted in an undercover capacity in the purchasing of crack cocaine. Prior to each of the controlled buys, King was searched by one of *92 the officers to make sure that he had no money or contraband on his person.
On March 10, 1995, the first controlled buy, Detective Oliver met with Sgt. Brame and King and gave them investigative funds to purchase crack cocaine from appellant. Sgt. Brame was given an electronic listening device. Sgt. Brame and King drove to the Shady Acres Motel where appellant resided. Sgt. Brame sat on a bench while King spoke with appellant at his apartment and then returned to the bench. Some time later, appellant joined them at the bench.
Detective Oliver remained hidden nearby and attempted to monitor the conversation through the listening device; however, reception was poor. King and appellant walked around the corner of the motel out of Sgt. Brame's sight. King returned without appellant, who then rejoined them a short time later. King and Sgt. Brame then walked towards a laundry room located on the side of the building, and on the top of a laundry machine were two packets of clear plastic wrap which turned out to contain crack cocaine. Sgt. Brame gave the cocaine to Detective Oliver who field tested it and confirmed that it was cocaine.
King testified that twice he went with an undercover officer to purchase cocaine from appellant at the Shady Acres Motel. For the first controlled buy, King went with Sgt. Brame to the motel; he knocked on appellant's door and was given the signal to sit on a bench around the corner of the building near a laundry room. King informed appellant that he wanted to buy two fifty dollars worth of rock cocaine. King was instructed to wait by the laundry room where they found the cocaine. King then asked appellant if Sgt. Brame could purchase some cocaine. As appellant would not take the money directly from Sgt. Brame, she gave her money first to King, who then handed it to appellant. Appellant got the cocaine and then gave it to King. Appellant stated that before he would sell directly to Sgt. Brame he wanted her to come by and smoke with him.
On May 10, 1995, the second controlled buy, Detective Oliver again met with Sgt. Brame and King and issued money for the purchase of crack cocaine from appellant. Sgt. Brame was wearing a transmitter. Again, Sgt. Brame and King went to the Shady Acres Motel and sat on the bench. Appellant and King went around the corner by the laundry room. Sgt. Brame was then summoned to go around the corner. King bought fifty dollars worth of crack by passing the money to appellant through a window in the laundry room. King then waited in the car while Sgt. Brame spoke with appellant.
Appellant agreed to sell directly to Sgt. Brame and indicated that she could come back any time. Appellant gave Sgt. Brame designated locations in which to park during the day and at night. Sgt. Brame tried to hand appellant forty dollars but he would not take the money directly. Appellant told Sgt. Brame to place the money on the laundry machine. Appellant picked up the money and walked around to the back of the motel. A few minutes later, appellant returned, and reached inside the window to the laundry room, and placed two aluminum foil packets on the laundry machine. Upon reaching her car, King handed Sgt. Brame a clear plastic wrapped package that appeared to have cocaine rock in it. The packets were then handed to Detective Jones.
On May 12, 1995, the third controlled buy, Detective Oliver met with Detective Jones, Sgt. Hill and Sgt. Brame. Sgt. Brame was given a listening device and issued one hundred dollars. Sgt. Brame and another undercover officer went to the Shady Acres Motel to again purchase crack cocaine from appellant. Appellant would not sell to Sgt. Brame with the other detective present and was told to drop the detective off a few blocks away. Appellant asked how much the sergeant wanted and that he would have it for her when she came back. Sgt. Brame indicated she wanted one hundred dollars worth of rock cocaine. When she returned, Sgt. Brame laid the money on the laundry machine. Appellant took the money and again went to the rear of the motel. He then placed the clear plastic bags on the window. Following the transaction, Sgt. Brame gave the cocaine to Detective Jones.
*93 On June 1, 1995, the fourth, attempted, controlled buy, Detective Oliver stated he had set up an operation to arrest appellant and find the location where appellant had been stashing his crack cocaine. Detective Oliver testified that dirt particles were on the packages of cocaine obtained from appellant on the previous buys. Two detectives were stationed in the woods to observe as close as possible where the crack cocaine was being kept. When Sgt. Brame arrived at the location, Detective Oliver was notified that the officers hiding in the woods had been spotted. As a result, for the safety of Sgt. Brame, Detective Oliver ordered that appellant be arrested. Detective Oliver and other officers searched the back of the motel and located a bag of crack cocaine buried in the ground. The crack cocaine was buried in an area along side the motel where the grass was dead.
Detective Jones testified that the plastic bags obtained from the May 10 and May 12 buys had particles of dirt in the packaging and in the items he tested. Likewise, Sgt. Brame testified that all of the cocaine bags with the exception of the aluminum foil packets had dirt on them.
Jacqueline Garcia, the manager of the Shady Acres Motel, testified that she stayed up one night to observe appellant and noticed people knock on his door and sit on the bench. Appellant would then sit with them briefly and then go behind the motel. Garcia did not know what he did behind the motel, but on occasion she saw appellant behind the motel with a flashlight. Appellant told Garcia that he liked to have the grass moved, because the dead grass was easy to "flip" up. Further, she observed appellant tell several people, including herself, not to go behind the motel.

MOTION FOR JUDGMENT OF ACQUITTAL
In denying appellant's motion for judgment of acquittal on the trafficking charge, the court reasoned as follows:
[F]irst let me say it's a very close legal question whether there's a prima facie case has been established for Count 7, the trafficking cocaine. There is, there's no question, there's no direct evidence that shows that the defendant had possession, either constructive or actual possession of the cocaine that was found buried, 40 odd some grams. There is circumstantial evidence from the prior sales of testimony by the undercover officer and detective and the CI on March 10th, May 10th, and May 12th that Mr. Dupree, the defendant, would go back out of sight in the back of the Shady Oaks Motel and returned with the cocaine. So, on those three dates there's evidence that the defendant had hidden cocaine in back of the motel.... I think there's reasonable inferences that the defendant had hidden the cocaine in back of the motel. I am a little concerned about the date being June the 1st or some 19 days later after the last controlled buy on May the 12th.... [B]ecause of the March 10th testimony by the undercover officer and the CI, the May 10th testimony by the same two persons, and then the May 12th testimony by the undercover officer alone, Bev Brame, indicates that the defendant had hidden cocaine in the back of the motel and because there was dirt found on some of the baggies indicates that it was hidden in the dirt. So, from all those reasons, I found there was enough circumstantial evidence and reasonable inferences for knowledge and control and the defendant had hidden or concealed it.
Generally, on a motion for judgment of acquittal, the court should not grant the motion unless, when viewed in a light most favorable to the state, the evidence does not establish the prima facie case of guilt. Proko v. State, 566 So.2d 918, 919 (Fla. 5th DCA 1990). "In moving for a judgment of acquittal, a defendant admits all the facts and evidence adduced at trial, as well as every conclusion favorable to the State that a jury might fairly and reasonably infer therefrom." Boyce v. State, 638 So.2d 98, 99 (Fla. 4th DCA 1994); see also Lynch v. State, 293 So.2d 44, 45 (Fla.1974). "The state is not required to `rebut conclusively every possible variation' of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events." State v. *94 Law, 559 So.2d 187, 189 (Fla.1989). "It is the trial judge's proper task to review the evidence to determine the presence or absence of competent proof from which the jury could infer guilt to the exclusion of all other inferences." Law, 559 So.2d at 189 (citing Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976)).
In this case, the evidence presented by the state against appellant is clearly circumstantial. The Florida Supreme Court in Law, 559 So.2d at 188-89, set forth the following standard for reviewing circumstantial evidence:
The law as it has been applied by this Court in reviewing circumstantial evidence cases is clear. A special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence. Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.
....
... A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. See Wilson v. State, 493 So.2d 1019, 1022 (Fla.1986). Consistent with the standard set forth in Lynch [v. State, 293 So.2d 44 (Fla.1974)], if the state does not offer evidence which is inconsistent with the defendant's hypothesis, "the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law." 293 So.2d at 45 (Fla.1974). The state's evidence would be as a matter of law "insufficient to warrant a conviction." Fla. R.Crim. P. 3.380.
(Citations omitted).
As the trial court recognized, this case presents a close legal question. It is clear that while appellant was seen in the back of the motel on several occasions, including occasions when the controlled buys were made, he was never physically seen burying the cocaine, digging it up, or in actual possession of the cocaine that was found buried. As appellant was not in actual possession of the cocaine and it was not in plain view, constructive possession must be established. Lewis v. State, 570 So.2d 346, 348 (Fla. 2d DCA 1990).
To establish constructive possession of a controlled substance, the state must show that the accused had dominion and control over the contraband, that he must have knowledge that the contraband was within his presence, and he must have knowledge of the illicit nature of the contraband. Brown v. State, 428 So.2d 250, 252 (Fla.1983), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983)(citing Wale v. State, 397 So.2d 738 (Fla. 4th DCA 1981)). If the premises on which the contraband is found is in joint, rather than exclusive, possession of a defendant, knowledge of the presence of the contraband on the premises and the accused's ability to maintain control over it will not be inferred, but must be established by independent proof. Brown, 428 So.2d at 252; see also Hively v. State, 336 So.2d 127 (Fla. 4th DCA 1976). Such proof may consist either of evidence establishing that the accused had actual knowledge of the presence of the contraband, or of evidence of incriminating statements and circumstances, other than the mere location of the substance, from which a jury might lawfully infer knowledge by the accused of the presence of the contraband on the premises. Murphy v. State, 511 So.2d 397, 399 (Fla. 4th DCA 1987); see also Brown v. State, 519 So.2d 1045 (Fla. 4th DCA), review denied, 531 So.2d 167 (Fla. 1988). Mere proximity to contraband is not sufficient to establish constructive possession. Lewis, 570 So.2d 346, 348 (Fla. 2d DCA 1990); see also Jean v. State, 638 So.2d *95 995 (Fla. 4th DCA), review denied, 645 So.2d 452 (Fla.1994).
As discussed above, in addition to the location in which the cocaine was found  behind the motel, witnesses established that appellant completed each drug transaction after he returned from the back of the motel, that dirt particles were found on the plastic bags obtained as a result of the controlled buys, that appellant was often seen in the back of the motel at night with a flashlight, that appellant told King and Garcia not to go behind the motel and that he liked the grass mowed because the dead grass could be flipped up. Because Garcia, as property manager, refused to heed appellant's request not to go behind the motel, appellant did not have exclusive dominion and control over the area. However, it can be concluded that appellant's incriminating statements concerning the dead grass and his warning to others as to their presence behind the motel, coupled with the dirt on the plastic bags, support the conclusion that a jury might infer knowledge of the presence of the cocaine.
We, therefore, find the trial court's denial of the motion for judgment of acquittal to be proper.

MOTION FOR SEVERANCE
Prior to trial, appellant filed a motion to sever each of the possession, sale, and trafficking counts which took place on March 10, May 10, May 12, and June 1, 1995. Appellant claimed that by trying all four dates together there would not be a fair determination of guilt or innocence, there would be an improper admission of prior bad acts, the prejudice would outweigh the probative value, and there would be an improper spillover effect resulting in the jury using evidence adduced on one charge to dispel the doubts on another charge. The trial court disagreed and denied the motion for severance. We agree with appellant and find that the trial court abused its discretion in failing to sever all of the charges.
Courts have recognized that the danger of improper consolidation lies in the fact that evidence relating to each of the crimes may have the effect of bolstering the proof of the other. Crossley v. State, 596 So.2d 447, 450 (Fla.1992). While the testimony in one case standing alone may be insufficient to convince a jury of the defendant's guilt, evidence that the defendant may have also committed another crime can have the effect of tipping the scales. Id. Thus, the court must be careful that there is a meaningful relationship between the charges of two separate crimes before permitting them to be tried together. Id.
The granting or denial of a motion to sever is generally a matter within the trial court's discretion and will not be disturbed absent a showing of abuse. See Fotopoulos v. State, 608 So.2d 784, 790 (Fla.1992), cert. denied, 508 U.S. 924, 113 S.Ct. 2377, 124 L.Ed.2d 282 (1993); Wonyetye v. State, 648 So.2d 797, 798 (Fla. 4th DCA 1994).
Florida Rule of Criminal Procedure 3.150(a) provides:
Two or more offenses that are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses... are based on the same act or transaction or on 2 or more connected acts or transactions.
Similarly, "[t]wo or more indictments or informations charging related offenses shall be consolidated for trial on a timely motion." Fla. R.Crim. P. 3.151(b). For purposes of rule 3.151(b), offenses are related "if they are triable in the same court and are based on the same act or transaction or on two or more connected acts or transactions." Fla. R.Crim. P. 3.151(b); Fotopoulos, 608 So.2d at 789.
Courts have held that the "connected acts or transactions" requirement of rule 3.150 means that the acts joined for trial must be considered in an episodic sense, i.e., that they occurred within a single episode. Id. In Ellis v. State, 622 So.2d 991 (Fla.1993), the Florida Supreme Court explained:
"the rules do not warrant joinder or consolidation of criminal charges based on similar but separate episodes, separated in time, which are `connected' only by similar circumstances and the accused's alleged guilt in both or all instances." Courts may *96 consider "the temporal and geographical association, the nature of the crimes, and the manner in which they were committed." However, interests in practicality, efficiency, expense, convenience, and judicial economy, do not outweigh the defendant's right to a fair determination of guilt or innocence.

Id. [Wright v. State, 586 So.2d 1024 (Fla. 1991)] at 1029-30 (citations omitted)(quoting Garcia v. State, 568 So.2d 896, 899 (Fla.1990)). Moreover, even where joinder is otherwise proper, a defendant is entitled to have separate trials upon a showing that severance is "necessary to achieve a fair determination of the defendant's guilt or innocence of each offense." Fotopoulos v. State, 608 So.2d 784, 790 (Fla.1992), cert. denied, 508 U.S. 924, 113 S.Ct. 2377, 124 L.Ed.2d 282 (1993).
622 So.2d at 999. The Ellis court further set forth rules governing the proper joinder of offenses for trial:
First, for joinder to be appropriate the crimes in question must be linked in some significant way. This can include the fact that they occurred during a "spree" interrupted by no significant period of respite, or the fact that one crime is causally related to the other, even though there may have been a significant lapse of time. But the mere fact of a general temporal and geographic proximity is not sufficient in itself to justify joinder except to the extent that it helps prove a proper and significant link between the crimes.
(Citations omitted) Id. at 1000.
In Crossley v. State, 596 So.2d 447 (Fla. 1992), the Florida Supreme Court found an abuse of discretion in the failure to sever two robbery counts even though they occurred within three hours and three miles of each other and involved similar circumstances. As the court explained, the two episodes were "entirely independent," with "absolutely nothing" connecting one event to the other. Id. at 450. Based on the same reasoning, the court concluded in Ellis, that the trial court erred in allowing the joinder of two counts of murder and one count of attempted murder. Although all three crimes were committed in a similar manner and in the same general area, there was no other link between them. 622 So.2d at 1000.
While in applying the above principles to the present case we conclude that the four transactions, occurring March 10, May 10, May 12 and June 1, are entirely similar, but separate episodes, separated by time, we are nevertheless constrained by this court's opinion in Williams v. State, 409 So.2d 253 (Fla. 4th DCA), rev. denied, 417 So.2d 331 (Fla. 1982). In Williams, this court held that severance of two counts for sale of cocaine was not required where drug sales occurred during the course of an "ongoing investigation," within a limited period of time, in a limited geographical area, and where the participants to both transactions were the same. The court concluded that although the transactions were separated in time, they were clearly and directly connected in an episodic sense. Id. at 254.
Judge Hurley, however, dissented in Williams, taking issue with the majority's reasoning that the transactions were connected because of an ongoing undercover investigation.
As I view them, the charges in the present case are "(b)ased on similar but separate episodes, separated in time, which are `connected' only by similar circumstances and the accused's alleged guilt in both or all instances." Therefore, I cannot join in the majority's conclusion that these crimes are "clearly and directly connected in an episodic sense," i.e., are part of a single criminal episode.
The majority emphasizes that both sales occurred during the course of an ongoing investigation. I fail to see the relevance of that fact. Whether crimes form part of a criminal episode depends on the activities of the defendant, not the activities of the police in investigating the defendant.
In this case each sale was a separate and distinct transaction. The two charges did not arise from one continuous sequence of events. The fact that both sales were to the same undercover officer is hardly enough to distinguish this case from Paul [v. State, 385 So.2d 1371 (Fla.1980)]. Similarly, *97 the fact that both sales occurred within a week's time is not enough.
(Citations omitted) Id. at 254-55.
We recede from the holding in Williams to the extent that it permits one trial for a series of drug sales which occurred during the course of an "ongoing investigation," within a limited period of time, and in a limited geographical area, and adopt the view of the dissent, thereby necessitating severance in this case.
The rationale in Judge Hurley's dissent has likewise been adopted by our sister court in Pittman v. State, 693 So.2d 1133 (Fla. 1st DCA 1997). As in this case, Pittman involved the sale of drugs on different days involving an undercover purchaser. In reversing for separate new trials, the First District disagreed with the majority in Williams and specifically "aligned" itself with Judge Hurley's dissent, certifying conflict with Williams. Id. at 1136. In finding the drug sales to be improperly consolidated, the First District stated the following:
These two sets of crimes are similar but they lack any causal link or episodic character. Despite their temporal and geographic proximity, they arise from "similar but separate episodes, separated in time which are `connected' only by similar circumstances and the accused's alleged guilt in both or all instances." (citation omitted). The two sets of sales could not be fairly characterized as offenses connected to each other as a part of a crime spree. Bundy v. State, 455 So.2d 330 (Fla.1984). Nor does it appear that the third sale was caused by the first two sales. Fotopoulos v. State, 608 So.2d 784 (Fla.1992).
693 So.2d at 1135.
Accordingly, based on the foregoing, we find that each of the four transactions was a separate offenses, and thus, the denial of the motion for severance constituted an abuse of discretion. We therefore reverse and remand for separate new trials.
REVERSED AND REMANDED.
STONE, C.J., and GLICKSTEIN, DELL, GUNTHER, WARNER, POLEN, FARMER, KLEIN, STEVENSON and GROSS, JJ., concur.