761 So.2d 1154 (2000)
Dennis DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D98-2631.
District Court of Appeal of Florida, Second District.
May 17, 2000.
*1155 Walter L. Grantham, Jr., Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John T. Salgado, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Dennis Davis appeals his convictions for carrying a concealed firearm and for trafficking by possession of cocaine. At trial he moved for judgment of acquittal on both charges, contending that the evidence was legally insufficient for conviction. Mr. Davis was arrested after extensive nighttime surveillance of his activities. Because it was dark and because the arresting officers were limited in what they could observe, there was no direct evidence that Mr. Davis had concealed a firearm or that he had possessed cocaine. The State was thus forced to adduce circumstantial evidence for the trafficking offense, evidence that was insufficient for conviction. Accordingly, we reverse Mr. Davis's convictions on both offenses.

*1156 I. FACTS

The State relied upon the testimony of four St. Petersburg police officers to establish Mr. Davis's guilt. All four officers were part of a team conducting nighttime surveillance at a residence located on 15th Avenue South. During a period lasting at least three hours, the officers observed Mr. Davis in the yard near the home.
The State's case commenced with testimony from Officer Merlin, who was concealed across the street and saw a succession of people approach Mr. Davis, many of whom held money in their hands. Mr. Davis and the unknown persons would then walk over to a location in the yard that was out of Officer Merlin's line of sight. When they emerged into view Officer Merlin could no longer see any money in their hands, but he did see one person carrying a bag. When the man stopped under a street light to examine its contents, Officer Merlin was able to discern what he believed to be crack cocaine. The unidentified man then left the area; the police never attempted to stop him or to seize the contents of the bag. Officer Merlin, whose view was often blocked by shrubbery, never saw Mr. Davis transact a drug deal nor did he observe any dealings with a firearm. He testified only that he detected a repeated pattern of behavior by Mr. Davis and his visitors over the three-hour period.
After other officers were placed in strategic positions near the residence, Officer Merlin gave the command to "move in" and take Mr. Davis into custody. Upon catching sight of the officers, Mr. Davis ran away from the residence, jumped a fence, and landed in a public alley bordered by homes on both sides. As he fled down the alley his pants kept sliding down to his feet, causing him to fall. Ultimately, two officers tackled him in the alley.
The second officer to testify, Officer Richards, was involved in the chase and did an area search after Mr. Davis was apprehended. He found a "small softball" sized bag of cocaine. Measuring from the alley fence to the indentation Mr. Davis's outstretched hand made in the sand when he was tackled, Officer Richards estimated that the bag was approximately four feet from the hand mark "at an angle close to the fence." The officer also noted that because he "was more worried about [Mr. Davis] turning on us just in case he did have a firearm," he paid close attention to the defendant's hands, but he did not see Mr. Davis either possess or throw anything-drugs or a firearm-during the chase through the alley.
The third officer to testify, Officer Weaver, stated that after the arrest he searched the area along the defendant's path. Backtracking Mr. Davis's route, Officer Weaver found a black semi-automatic pistol lying in some high grass, approximately a foot and a half to two feet from Mr. Davis's track. The fourth officer, Officer Waldo, said that the cocaine was found at the "base of the bushes." Like Officer Richards, Officer Waldo never saw Mr. Davis holding or throwing either item. As to the gun, however, Officer Weaver said that Mr. Davis told him that he was holding the gun "for some white guy."
These facts, presented to the jury in the State's case, were insufficient to convict Mr. Davis of the offenses with which he was charged. As will be evident in the following sections of this opinion, even when reasonable inferences from those facts are considered in the State's favor, the applicable law requires reversal.

II. CARRYING A CONCEALED FIREARM
Mr. Davis could have been legally convicted of carrying a "concealed firearm" if he carried the gun on or about his person in a manner that would conceal the firearm from another person's "ordinary sight." § 790.001(2), Fla. Stat. (1995). "Ordinary sight" means "the casual and ordinary observation of another in the normal associations of life." See State v. *1157 Blanco, 702 So.2d 597, 598 (Fla. 2d DCA 1997).
We conclude that the State's evidence fails under either of two rationales. First, Mr. Davis's post-Miranda[1] admission that he was holding the gun for someone else was inadmissible until the State produced independent evidence that the defendant had committed the crime of concealment. See Hannah v. State, 751 So.2d 79 (Fla. 2d DCA 1999) (citing State v. Allen, 335 So.2d 823 (Fla.1976)). Absent Mr. Davis's statement, the State proved only that the defendant had been under narcotic surveillance for three hours and that, following his arrest, a black firearm was found in the alley. The State brought forth no independent evidence of concealment. Accordingly, Mr. Davis's statement was inadmissible.
Alternatively, under the second rationale, even if Mr. Davis's statement were admissible, it failed to prove concealment. Because of the darkness and their inability to see well, the officers might not have been able to observe the black firearm, even if the defendant had carried it in plain view. Unfortunately, no one testified about the location of the firearm until an officer discovered it in the alley. And then no one linked the firearm to the earlier surveillance of Mr. Davis. At most, Mr. Davis's statement proves only that he possessed a firearm-not that he concealed it. Thus, "[c]onclusions of guilt from these circumstances are reasonable, but certainly do not exclude reasonable hypotheses of innocence." See Chaudoin v. State, 362 So.2d 398, 402 (Fla. 2d DCA 1978).

III. TRAFFICKING IN COCAINE
As is the case with the firearm evidence, the State failed to bring forth legally sufficient evidence for conviction. The evidence was insufficient to prove that Mr. Davis either actually or constructively possessed the trafficking amount of cocaine that was discovered a short distance from the place where he landed in the alley.

A. Actual PossessionCircumstantial Evidence
Although they watched Mr. Davis for three hours, no State witness saw illegal drugs on or about Mr. Davis's person. Therefore, to prove that Mr. Davis actually possessed the drugs found in the alley, the State had to bring forth circumstantial evidence of that actual possession. For example, the State could have attempted to trace, in reverse, the drugs located in the alley back to the person of Mr. Davis. Not only was the State unable to do so, however, the only positive evidence before the jury was that no witnesses saw Mr. Davis throw anything. Thus, the only evidence allegedly linking Mr. Davis to the cocaine was the location of the drugs in relation to the place Mr. Davis landed when he was tackled, which is circumstantial evidence.
Where the evidence against a defendant such as Mr. Davis is entirely circumstantial, no matter how strongly it might suggest guilt, unless the evidence is inconsistent with any reasonable hypothesis of innocence, the conviction may not stand. See McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla.1977); Mayo v. State, 71 So.2d 899 (Fla.1954).
The failure of circumstantial evidence to prove actual possession was recently demonstrated by this court in Isaac v. State, 730 So.2d 757 (Fla. 2d DCA 1999).[2] There the defendant and another man were standing no more than a foot apart as they were observed by police officers. The two were passing an object between them that *1158 proved to be a bag of crack cocaine. One of the men dropped the baggie to the ground and the two began walking away. The police did not see which man dropped the baggie, but both men were searched, and neither the defendant nor the other man had either money or contraband on his person. This court observed:
To be sure, the circumstances suggested that one or both men possessed cocaine. At the same time, however, those circumstances did not exclude the reasonable hypotheses that the men found the baggie at that spot and were simply examining it when the policemen happened by, or that the other fellow brought the cocaine there and was showing it to Isaac. Therefore, we reverse Isaac's conviction and direct the circuit court to discharge him.
Isaac, 730 So.2d at 758.
Here, the nexus between the soft-ball-sized bag of cocaine and Mr. Davis is less direct than in Isaac. The State presented no evidence that the police examined the alley and saw no drugs or bag prior to the surveillance. Nor did they establish that the alley was in Mr. Davis's exclusive possession. Although the circumstantial evidence might lead to the inference that the bag was placed in the alley during the defendant's flight, the contrary direct evidence was that Mr. Davis did not throw anything while running through the alley. Even with the additional theoretical circumstantial evidence that Mr. Davis had acted as a narcotics salesman behind the shrubbery out of the officers' sight, the evidence fails because no further link to the bagsuch as money or other proceeds of salewas adduced. Evidence that creates nothing more than a strong suspicion that a defendant committed the crime is not sufficient to support a conviction. See Scott v. State, 581 So.2d 887 (Fla.1991). Because the State's evidence of actual possession created nothing more than a strong suspicion of Mr. Davis's guilt, the State was forced to rely on a theory of constructive possession.

B. Constructive Possession
A defendant will be deemed guilty of constructive possession of drugs when it can be shown that the defendant was able to exercise dominion and control over the drugs, knew of their presence, and knew of their illicit nature. See Smith v. State, 687 So.2d 875 (Fla. 2d DCA 1997). Proof of mere proximity of the defendant to the drugs is insufficient to sustain a conviction for constructive possession. See Lopez v. State, 711 So.2d 563 (Fla. 2d DCA 1997); State v. Snyder, 635 So.2d 1057, 1058 (Fla. 2d DCA 1994). The State is further prohibited from relying upon a pyramid of inferences that might be generated from its evidence to sustain a conviction. "Where two or more inferences in regard to the existence of a criminal act must be drawn from the evidence and then pyramided to prove the crime charged, the evidence lacks the conclusive nature to support a conviction." Green v. State, 667 So.2d 208, 212 (Fla. 2d DCA 1995) (quoting I.F.T. v. State, 629 So.2d 179, 180 (Fla. 2d DCA 1993)); see also Snyder.
The insufficiency of proximity (which the State concededly established in this case) has been highlighted in Lopez and in other constructive possession cases. Even when a defendant was found standing approximately one foot from a matchbook containing 19 packets of heroin, the evidence was held insufficient to withstand a motion for judgment of acquittal in Agee v. State, 522 So.2d 1044, 1045 (Fla. 2d DCA 1988). The drugs were found even closer to Mr. Agee than they were to Mr. Davis in this case, but the overriding unifying factor in both cases is the nature of the place in which the defendant and the drugs were discovered a public area accessible to others.
The public place was also an essential factor in Tanksley v. State, 332 So.2d 76 (Fla. 2d DCA 1976), where the police discovered heroin in a brown paper bag approximately 15 feet from a couch on which the defendant was sitting. The couch was in a vacant lot, and others were present at *1159 the scene. Inside the brown paper bag was another envelope that actually contained the heroin, and Mr. Tanksley's fingerprint was found on the envelope. Nevertheless, that evidence was insufficient to sustain the conviction. Although the fingerprint linked Mr. Tanksley to the envelope, there was no proof of when the heroin was placed in the envelope or by whom, and the reasonable hypothesis was that Mr. Tanksley had touched the envelope when there was no heroin in it. Unlike the Tanksley situation, the State in this case did not have fingerprintsor any other evidencethat would suggest a link between Mr. Davis and the bag of cocaine found in the alley.
When the contraband is found in a public place, more than mere proximity to the defendant must be shown to sustain a conviction. This is not an impossible burden on the State, as the case of Dupree v. State, 705 So.2d 90 (Fla. 4th DCA 1998), demonstrates. There, the defendant "was not in actual possession of the cocaine and it was not in plain view," 705 So.2d at 95, so the court determined that the State was required to establish constructive possession. Acknowledging that it was a close legal issue, the Fourth District affirmed the trial court's denial of the motion for judgment of acquittal on trafficking because the facts, coupled with the defendant's incriminating statements, supported a "conclusion that a jury might infer knowledge of the presence of cocaine." 705 So.2d at 95.
The Dupree case involved four controlled drug transactions in which the police never saw the appellant in actual possession of the drugs from which the trafficking charges arose. The transactions occurred at a motel. The trafficking drugs were found buried behind the motel, in an area accessible to others. The evidence showed that the appellant "completed each drug transaction as he returned from the back of the motel, that dirt particles were found on the plastic bags as a result of the controlled buys, that appellant was often seen in the back of the motel at night with a flashlight, that appellant told [the detectives] not to go behind the motel and that he liked the grass mowed because the dead grass could be flipped up." 705 So.2d at 95.
At least three enlightening factors distinguish Dupree from this case. First, this case involved no repeated controlled buys from which knowledge might be inferred. Second, Mr. Davis was never seen in the alley where the drugs were found, whereas in Dupree the dirt on the bags suggested that Mr. Dupree had dug the bags up from beneath the nearby soil on several occasions. Third, Mr. Davis, unlike Mr. Dupree, made no incriminating statements. Clearly, this case lacks circumstantial evidence with force commensurate to that in Dupree.

IV. CONCLUSION
Under the facts of this case, one could intuitively conclude that Mr. Davis might be guilty. However, "guilt cannot rest on mere probabilities." Arant v. State, 256 So.2d 515, 516 (Fla. 1st DCA 1972). And intuition is not a substitute for evidence under our jurisprudence.
As evidence, the State was left with only the stacking of inferences that were counter to the actual evidence. For example, because some people held money in their hands as they approached Mr. Davis but displayed no money as they left the area, those facts might suggest that Mr. Davis was selling drugs. To reach that conclusion, however, at least four inferences must be stacked: (1) that unknown "customers" gave Mr. Davis money; (2) that Mr. Davis gave the customers something in return; (3) that the substance sold was illegal; and (4) that the illegal substance was cocaine. Even the addition of evidence concerning the one person the police observed looking at a package that appeared to contain cocaine is of no avail to the State's theory, because to conclude from that evidence that Mr. Davis engaged in illegal behavior also requires the pyramiding of more assumptions. Because *1160 that person was not observed carrying money or drugs as he approached Mr. Davis, the factfinder would have to infer that he had money, that he gave it to Mr. Davis, and that Mr. Davis gave him cocaine in return. This man was never apprehended, so the jury would further have to assume that the substance was in fact cocaine and that it originated from the bag of cocaine ultimately found in the alley.
It is evident that only the most tenuous of threads connects Mr. Davis to the cocaine found nearby, and those threads consist of flimsy inferential links that cannot legally form a chain strong enough to sustain a conviction. The trial court erred in failing to grant Mr. Davis's motions for judgment of acquittal. Accordingly, we reverse and instruct the circuit court to discharge the defendant.
PARKER, A.C.J., Concurs.
DAVIS, J., Concurs in part and dissents in part with opinion.
DAVIS, Judge, Dissenting.
I concur with the majority's decision to reverse Davis's conviction for carrying a concealed firearm. However, I respectfully dissent from that portion of the majority's opinion which reverses Davis's conviction for trafficking in cocaine.
After reviewing the record, I believe the State provided competent, substantial evidence from which the jury could find that Davis possessed cocaine in the trafficking amount prescribed by statute. The State elicited testimony which shows that Davis ran down an alley. His pants dropped toward his ankles, causing him to stumble. As Davis fell, a police officer tackled him from behind. Davis's forward momentum and the added force of the officer's blow caused Davis to fall face down. As Davis struck the ground, his arms and hands extended away from his body in spread-eagle fashion. After subduing Davis, the officers found a softball-size package of cocaine in plain view approximately four feet from the spot where Davis's left hand made an indentation in the sand.
From this evidence alone, I believe the jury could reasonably determine that the cocaine fell from Davis's hand. The jury heard evidence which demonstrates more than mere proximity. That is, the jury could reasonably draw a nexus between Davis's forward momentum, the officer's blow from behind, and the distance from Davis's hand to the cocaine's locale, to conclude that Davis was in possession of the cocaine.
Additionally, I note that the State presented testimony about the officers' surveillance of Davis's suspicious conduct during the three-hour period before the police decided to arrest Davis. Similarly, the evidence showed that Davis fled from the officers, which may indicate a guilty conscience. Finally, the State elicited testimony describing the softball-size package of cocaine as containing approximately ninety-one individual pieces, providing a reasonable inference that Davis's suspicious conduct involved this cocaine.
I believe the events in the alley, and the totality of the circumstances, provided adequate reason to send this case to the jury. I cannot say that the trial court erred in denying Davis's motion for judgment of acquittal. Consequently, I would affirm Davis's conviction for trafficking in cocaine.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Although the court describes the events in Isaac in the context of constructive possession, a valid alternative context is actual possession, attempted to be proved circumstantially.