STREITFELD, JEFFREY E., Associate Judge.
John Johnson appeals from his convictions and sentences for nine related drug offenses. Johnson was charged in one information with three counts each of unlawfully filling a prescription for oxycodone, possessing oxycodone with the intent to sell or deliver, and sale of oxycodone, twice to a confidential informant and once to a detective. The unlawful conduct was al *1197 leged to have taken place on February 18, March 4, and March 31,1999.
Prior to trial (and again after the jury was sworn), the trial court denied Johnson’s Motion to Sever each of the three sets of charges. Denial of this Motion is alleged to be reversible error, in reliance on this court’s en banc decision in Dupree v. State, 705 So.2d 90 (Fla. 4th DCA 1998).
The State does not disagree that severance was warranted under Florida Rule of Criminal Procedure 3.150 and this court’s decision in Dupree. However, the State asserts that the error is harmless because each of the alleged criminal episodes could have been introduced in the trial of the other as similar fact evidence under the Williams Rule, an issue not addressed in Dupree. Williams v. State, 110 So.2d 654 (Fla.1959); § 90.404(2), Fla. Stat. (1999). Resolution of this issue requires a more detailed recitation of the underlying facts.
During the months of February and March, 1999, Johnson was treating with a doctor who prescribed oxycodone. Also in February, 1999, Detective Silverman received an offer of assistance from Robin Bateman to make undercover drug purchases.
On February 18, Johnson’s prescription for twenty-eight oxycodone pills was filled at Eckerd Drug Store by an unidentified person. Bateman called Johnson’s wife, Joyce McCrae Johnson (Joyce), the original target of the investigation, and arranged to meet at the driver’s license bureau with Silverman following and watching. Joyce arrived in a car driven by a black male that she referred to as her husband, who removed twenty-eight pills from a prescription bottle and gave them to Joyce, who handed them to Bateman in return for the agreed price of $150.00. Bateman positively identified Johnson as the black male. Silverman could not identify the occupants of the car, but he ran a check of the license plate that showed that the car was registered to Johnson and Joyce.
The second transaction, occurred on March 4. Again, Johnson’s prescription for twenty-eight oxycodone pills was filled at Eckerd Drug Store by an unidentified person. Bateman arranged to meet Joyce at the same location. Bateman was accompanied by Detective Greenwell. Joyce arrived in the same uar driven by the same black male. Bateman paid $160.00 for twenty-eight pills.
The third transaction took place on March 31. This time Johnson’s prescription was filled at Walgreens Pharmacy by an unidentified person, and the buy was arranged by Detective Greenwell calling the Johnsons at their home. He spoke to both of them, and arranged to meet them at a K Mart parking lot. The same black male drove the same car, with Joyce, as a passenger. .Joyce exchanged twenty-eight pills for $170.00. The black male said the price was going up to $20 . per pill in the future.
Joyce previously entered a plea to charges arising out of the, three transactions, and was placed on one year of community control, followed by two years of probation. She testified at trial and acknowledged the prescriptions and the transactions.
The only material factual issue in dispute was the identity of the black male that accompanied Joyce in each of the transactions. Joyce testified that the man was not her husband, but an acquaintance named “Black,” who only pretended to be her husband. She testified that her husband did not know she was selling the oxycodone pills and did not receive any of the proceeds. Bateman positively identified Johnson as the black male in the February 18 and March 4 transactions, *1198 and Detective Greenwell positively identified Johnson as the black male in the March 4 and March 31 transactions.
Similar fact evidence is admissible to prove identity where there is something unique or unusual about it which tends to establish that the defendant committed the crimes charged. Blevins v. State, 756 So.2d 1052 (Fla. 4th DCA 2000); Williams. Although a general similarity is insufficient, it is not necessary that the collateral crimes be identical to the one in issue, provided there are sufficient identifiable points of similarity between them. Blevins.
In this case, the crimes are nearly identical. There are multiple identifiable points of similarity in the transactions. When the record supports the position that testimony concerning each of the alleged criminal episodes could have been introduced in the trial of the other as similar fact evidence, the trial court’s refusal to sever the charges is harmless error. Crossley v. State, 596 So.2d 447, 450 (Fla.1992); Shape v. State, 517 So.2d 780, 781 (Fla. 5th DCA 1988).
This court did not reach this issue in Dupree, because the issues did not involve the identity of the accused, but whether the alleged drug transactions took place at all, and whether there was sufficient evidence to place the accused in possession of the drugs. In the case sub judice, identity was the only issue. That the crimes were committed was undisputed.
For these reasons, the denial of the Motion to Sever was harmless error. The Judgment and Sentence are affirmed.
GUNTHER and WARNER, JJ., concur.