WALLACE, Judge,
Concurring in part and dissenting in part.
I concur with the majority that the trial court erred in denying Mr. Evans’ motion for a mistrial after the prosecutor improperly commented on the exercise by Mr. Evans of his right to remain silent. However, I respectfully dissent from the majority’s holding concerning the sufficiency of the evidence to establish that Mr. Evans was in constructive possession of the cocaine found in the east bedroom of the residence owned by Ricky Kutner. Because Mr. Evans’ conviction is not supported by competent, substantial evidence, I would reverse his judgment and sentence for trafficking in cocaine and remand for discharge.
Because Mr. Evans did not actually possess the cocaine, the State was required to prove that he was in constructive possession of it. See King v. State, 817 So.2d 935, 937 (Fla. 5th DCA 2002). To prove constructive possession, the State had to establish that Mr. Evans knew of the presence of the cocaine and that he was able to exercise dominion and control over it. See Edison v. State, 954 So.2d 1235, 1237 (Fla. 2d DCA 2007). This court recently summarized what the State must prove to establish constructive possession of contraband as follows:
If the State proves that the contraband was in plain view, then the defendant’s knowledge of the contraband’s presence is established. Brown v. State, 428 So.2d 250, 252 (Fla.1983). However, the issue of control is not established by the fact that the contraband is in plain view unless the accused is an occupant or owner. Id. In the event the accused is *93 a mere visitor in jointly possessed premises, then the State must establish control of contraband in plain view by independent evidence. Taylor v. State, 319 So.2d 114, 116 (Fla. 2d DCA 1975).
Sundin v. State, 27 So.3d 675, 677 (Fla. 2d DCA 2009).
In this case, the State’s proof established that the residence where the cocaine was found was owned by Mr. Kutner. There was nothing found in the trash pulls that linked Mr. Evans to the residence, and he was never seen at the residence during the surveillances that preceded the execution of the search warrant. When the sheriffs deputies entered the residence, there were eight people inside, including the owner. The State did not present evidence that Mr. Evans had any possessory interest either in the residence or in the east bedroom where the cocaine was found. Based on the evidence presented, Mr. Evans could only be considered to be one of multiple visitors to the residence. Thus the State’s proof completely failed to establish that Mr. Evans had exclusive possession of the east bedroom. I do not argue — as the majority suggests in footnote 4 — that the State was required to prove that Mr. Evans was in exclusive possession of the east bedroom. However, because the residence was jointly occupied and the cocaine in the east bedroom was readily accessible to all eight of the residence’s occupants, the elements of knowledge and control could not be inferred from Mr. Evans’ mere proximity to the cocaine but had to be shown by independent proof. See id.; Diaz v. State, 884 So.2d 387, 389 (Fla. 2d DCA 2004); S.B. v. State, 657 So.2d 1252, 1253 (Fla. 2d DCA 1995).
The evidence was insufficient to demonstrate that Mr. Evans had knowledge of or dominion and control over the cocaine. Although there were seven other people inside the residence during the execution of the warrant, none of them testified at trial to place Mr. Evans in possession of the cocaine in the east bedroom. There was no evidence that the deputies had sent a confidential informant into the residence to make a controlled purchase of cocaine. Furthermore, Mr. Evans did not make any incriminating statements indicating his dominion and control over the cocaine. No drugs were discovered on his person, and nobody testified that he had touched, handled, or discarded the cocaine. Although the latex gloves that Mr. Evans was wearing were tested for cocaine residue, none was found. Most of the cocaine was lying on the floor inside a clear plastic bag[7] near the cereal box, between the bag and the cereal box, and on top of the cereal box. However, no fingerprints were found on the clear plastic bag. Likewise, no fingerprints were found on the fake Pepsi and Mountain Dew soda cans that contained baggies holding cocaine or on the baggies themselves.
Contrary to the majority’s reasoning, evidence showing that Mr. Evans’ fingerprints were found on various items inside the east bedroom did not tend to establish his knowledge of or dominion and control over the cocaine. Kresbach v. State, 462 So.2d 62 (Fla. 1st DCA 1984), is instructive in this regard. In Kresbach, a Federal Express employee found an open package inside a drop box. Id. at 63. Inside the package, he found a manila envelope that *94 contained two plastic bags. Id. One of the bags contained cocaine. Id. The police found one fingerprint on the package, five fingerprints on the manila envelope, and twelve fingerprints on the plastic bags. Id. at 63-64. One of the five fingerprints found on the manila envelope matched the defendant’s fingerprints. Id. at 64. The First District found that the fingerprint evidence was insufficient to prove the knowledge and control elements because other prints were found and it could not be determined when the defendant had touched the manila envelope. Id. at 65.
The facts in Kresbach are analogous to the facts in this case. To be sure, Mr. Evans’ fingerprints were found on various items inside the east bedroom. But fingerprints belonging to another person or persons were also found on the plastic Walmart bag and on a compact disk inside the shoebox. The fingerprints of Kevin Lee, one of the eight persons inside Mr. Kutner’s house, matched prints taken from a compact disk found inside the rental car parked outside Mr. Kutner’s house, a DVD sleeve found inside the plastic Walmart bag, and the top of a can found inside the trash can where the sheriffs deputies found the cigar box. Mr. Evans could have touched the cereal box at any time before the cocaine was placed on top of it. The presence of Mr. Evans’ fingerprints on various items inside the east bedroom merely shows that he touched those items at an undetermined time and is not inconsistent with his reasonable theory of innocence that one of the other seven people in the house threw the drugs into the east bedroom. Because fingerprints belonging to other persons were found inside the east bedroom and the evidence does not reflect when Mr. Evans touched the cereal box, the fingerprint evidence was insufficient to prove that Mr. Evans knew of or had dominion and control over the cocaine. See Tanksley v. State, 332 So.2d 76, 77 (Fla. 2d DCA 1976) (reversing a conviction for possession of heroin where the defendant’s fingerprints were found on an envelope holding foil packets containing heroin because it was possible that the defendant handled the envelope before the cocaine was placed inside); McClain v. State, 559 So.2d 425, 426 (Fla. 4th DCA 1990) (reversing a conviction for attempted trafficking where multiple prints were found and the defendant could have touched the item before the drugs were placed inside); Kresbach, 462 So.2d at 65.
The majority’s reliance on Jackson v. State, 995 So.2d 535 (Fla. 2d DCA 2008), is unwarranted. In Jackson, police found drugs near the defendant at his residence after they entered to execute a search warrant. Id. at 537. The drugs were found about five feet away from the defendant in a change purse that appeared to have spilled from a larger purse. Id. at 540. Next to the change purse was a cigarette case that held a credit card bearing the defendant’s name and that also appeared to have spilled out of the same large purse. Id. at 537. The defendant was known to carry a large purse and there was no evidence that the purse belonged to anyone else. Id. at 541. This court held that this evidence was sufficient to support the defendant’s convictions and affirmed. Id.
Here, unlike in Jackson, the evidence did not show that any personal effects belonging to Mr. Evans were found in the east bedroom. The fingerprint evidence showed only that Mr. Evans and various other persons had touched various items in the east bedroom but did not demonstrate ownership. The majority relies heavily on the similarity of the latex gloves that Mr. Evans was wearing when he was arrested to the latex gloves found in the east bedroom. This reliance is misplaced. Latex gloves are mass-produced, fungible items *95 readily available to anyone. Cf. Scruggs v. State, 785 So.2d 605, 607 (Fla. 4th DCA 2001) (noting that plastic baggies found in defendant’s vehicle “similar” to plastic baggies containing cocaine found on the ground “are fungible and readily available to anyone”). In addition, mass-produced disposable products such as latex gloves are substantially different from personal items owned or controlled by a defendant that may give rise to an inference of knowledge and dominion and control. See Jackson, 995 So.2d at 540 (credit card bearing defendant’s name); State v. Holland, 975 So.2d 595, 598 (Fla. 2d DCA 2008) (health insurance card and other belongings); Wale v. State, 397 So.2d 738, 740 (Fla. 4th DCA 1981) (box bearing defendant’s name); see also Ladd v. State, 710 N.E.2d 188, 191 (Ind.Ct.App.1999) (defendant’s pay stub, bank receipts, and photographs); People v. Coleman, 26 A.D.3d 773, 808 N.Y.S.2d 527, 529 (N.Y.App.Div.2006) (prescription receipts in defendant’s name that listed the apartment being searched as his address). Thus the evidence concerning the items in the east bedroom did not give rise to an inference of knowledge or dominion and control.
In addition, the State’s evidence was insufficient because it required the impermissible pyramiding of inferences in order to arrive at the conclusion of guilt. “[T]he jury cannot base inference upon inference in order to arrive at a conclusion of fact.” Sirmons v. Pittman, 138 So.2d 765, 770 (Fla. 1st DCA 1962). For this reason, the State cannot rely on the pyramiding of inferences to prove the necessary elements of a crime. See Davis v. State, 761 So.2d 1154, 1158 (Fla. 2d DCA 2000). “ ‘Where two or more inferences in regard to the existence of a criminal act must be drawn from the evidence and then pyramided to prove the crime charged, the evidence lacks the conclusive nature to support a conviction.’ ” Id. (quoting Green v. State, 667 So.2d 208, 212 (Fla. 2d DCA 1995)).
In this case, the jury was required to pyramid at least four inferences to conclude that Mr. Evans had dominion and control over the cocaine. First, cocaine was being distributed out of the east bedroom. Second, Mr. Evans was responsible for preparing the cocaine for distribution. Third, Mr. Evans fled the east bedroom when he was alerted to the arrival of the sheriffs deputies. And, fourth, immediately before the raid began, Mr. Evans was actively engaged in preparing the cocaine for distribution. Because the testimony established that the cocaine was cut into pieces that would be sold for twenty dollars each and there was a large quantity of cocaine and related paraphernalia found in the east bedroom, I agree that it is reasonable to infer that the cocaine was being distributed out of the east bedroom.
Beyond the entirely reasonable inference about the activities being conducted in the east bedroom, the pyramid of inferences becomes unsupportable. Initially, there is no support for the inference that Mr. Evans was preparing the cocaine for distribution. The State did not establish how long Mr. Evans had been inside Mr. Kutner’s house. Although Mr. Evans had $1785 in cash in his possession when he was arrested, the State did not prove a link between the cash and the cocaine. At trial, the State relied heavily on the latex gloves Mr. Evans was wearing to establish his dominion and control of the cocaine. However, the State’s reliance on the gloves is an example of the logical fallacy of the undistributed middle. Presented in the form of a syllogism, the State’s argument was as follows:
1. Drug distributors wear latex gloves.
2. Mr. Evans was wearing latex gloves.
3. Therefore, Mr. Evans was a drug distributor.
*96 Even if all drug distributors wear latex gloves to protect themselves and their merchandise, most people who wear latex gloves are not drug distributors. Many people wear latex gloves for legitimate purposes, e.g., food preparation, cleaning, and rendering medical and dental services. Law enforcement officers and other persons engaged in forensic work frequently wear latex gloves to avoid contaminating a crime scene. Clearly, the jury’s verdict finding Mr. Evans guilty of trafficking in cocaine could not have been reached without resort to a pyramiding of inferences.
In my view, the Voelker exception to the general rule against pyramiding inferences does not apply in this case. “[Wjhen an inference ... is inescapable, that is to say when no contrary reasonable inference may be indulged, such inference is elevated for the purpose of further inference to the dignity of an established fact.” Voelker v. Combined Ins. Co. of Am., 73 So.2d 403, 407 (Fla.1954). This exception applies in criminal cases, Benson v. State, 526 So.2d 948, 952-53 (Fla. 2d DCA 1988), and allows the pyramiding of an inference upon another inference “only if the prior or basic inference is established to the exclusion of any other reasonable theory should another be drawn from it,” Voelker, 73 So.2d at 407.
In this case, the inference that Mr. Evans was preparing the cocaine for distribution was not established to the exclusion of any other reasonable inferences. When the sheriffs deputies arrived to execute the search warrant, Mr. Lee and Ms. Trummell were at the front door of Mr. Kutner’s house. When Mr. Lee and Ms. Trummell saw the deputies approaching, they ran back inside the residence. The deputies found Mr. Lee in the hallway between the bathroom and the east bedroom. He had marijuana on his person. Based on these facts, it is just as likely that Mr. Lee — and not Mr. Evans — was the person who was preparing or selling the cocaine. Similarly, the inference that Mr. Evans fled the east bedroom as the deputies burst into the residence was not established to the exclusion of any other reasonable inferences. No one testified to how long Mr. Evans had been in the bathroom. The deputies found the bathroom door ajar and Mr. Adams hiding inside the bathroom closet beneath some towels. Mr. Adams, who was trying to conceal himself, may well have been the person who left the bathroom door ajar in his rush to hide from the deputies. In addition, Mr. Kutner, the owner of the residence, was on the premises during the execution of the search warrant. Because the State did not establish the inferences on which its theory of the case depended to the exclusion of other reasonable theories, the Voelker exception does not apply. See Green House, Inc. v. Thiermann, 288 So.2d 566, 568 (Fla. 2d DCA 1974) (refusing to apply the Voelker exception where the basic inference was not established to the exclusion of one other reasonable inference). Because the jury’s guilty verdict necessarily rests on an impermissible pyramiding of inferences, Mr. Evans’ conviction is unsupportable.
I concede that the unusual circumstances attendant on the deputies’ discovery of Mr. Evans in the bathroom of the Kutner residence lend a certain appeal to the intuitive leap required to presume his guilt. However, “intuition is not a substitute for evidence under our jurisprudence” and “ ‘guilt cannot rest on mere probabilities.’ ” Davis, 761 So.2d at 1159 (quoting Arant v. State, 256 So.2d 515, 516 (Fla. 1st DCA 1972)). For the reasons outlined above, the evidence presented by the State was insufficient to prove that Mr. Evans *97 had knowledge of or dominion and control over the cocaine found in the east bedroom of Mr. Kutner’s residence. Accordingly, I would reverse Mr. Evans’ judgment and sentence and remand with instructions for his discharge,

. The record reflects that this clear plastic bag was not the Walmart plastic bag mentioned in the majority opinion. The clear plastic bag contained only cocaine and was introduced into evidence as State's exhibit 13. The Walmart bag contained compact disk sleeves, DVDs, and the fake Mountain Dew soda can. The Walmart bag was not introduced into evidence.